**DAVID M. MICHAEL, CSBN 74031**
**EDWARD M. BURCH, CSBN 255470**
Law Offices of David M. Michael
One Sansome Street, Suite 3500
San Francisco, CA 94104
Telephone:   (415) 946-8996

**JOE D. BUSTOS**
400 E 20th Street
Cheyenne, WY 82001
Telephone:   (307) 638-4633

**Attorneys for Defendant**
SCOTT MICHAEL LEWIS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>v.<br><br>One Cessna Airplane, Model Number TU-206, bearing Tail Number N6214V and Serial Number U206-1189, and<br><br>$259,717 United States Currency,<br><br>      Defendants,<br><br>SCOTT MICHAEL LEWIS,<br><br>      Claimant. | Civil Case No.: 2:14-cv-00151-ABJ |

**ANSWER OF SCOTT MICHAEL LEWIS TO VERIFIED COMPLAINT FOR FORFEITURE IN REM; DEMAND FOR TRIAL BY JURY**

Claimant SCOTT MICHAEL LEWIS hereby answers the allegations in the

Government's Complaint For Forfeiture as follows:

In response to the allegations (Doc. 1 at pp. 3-4) that:

> The Defendant-Property was seized from Scott Lewis and Gilbert Wiles on February 28, 2014, as part of an investigation of suspected drug trafficking. The following facts were learned in the investigation and support a reasonable belief that the government can prove by a preponderance of the evidence that the Defendant-Property is subject to forfeiture[,]

Claimant admits that the Defendant-Property was seized from Scott Lewis and Gilbert Wiles on February 28, 2014 and denies the remaining allegations.

> In response to the allegations (Doc. 1 at p. 4) that:

> On February 27, 2014, the director of operations for Choice Aviation at the Yellowstone Regional Airport, called Cody (Wyo.) police to report a suspicious airplane (later identified as the Defendant-Airplane) which had arrived at the airport at approximately 4:00 p.m. that day. The director believed the airplane and its occupants were suspicious for the following reasons.

Claimant admits that Defendant-Airplane arrived at the Yellowstone Regional Airport in the afternoon on February 27, 2014. In regards to the remaining allegation/s contained in the paragraph of the Complaint quoted immediately above, Claimant lacks sufficient information to form a belief as to the truth of the allegations contained therein, and, on those grounds, denies each and every allegation contained therein.

> In response to the allegations (Doc. 1 at pp. 4-5) that:

> [T]he Defendant-Airplane had previously landed at the airport in November 2013. On that occasion, the pilot (who was later identified as Scott Lewis) asked if he could stay with his plane overnight in the Choice Aviation facility. When told that he could not, rather than stay in a local hotel, the pilot immediately paid cash for fuel and de-icing and then flew out of the airport at 8:00p.m. heading west into a snowstorm. Second, in November 2013 when the Defendant- Airplane landed at the airport, the occupant immediately placed sunshades into the windows so no one could see into the plane. On February 27th, the occupants did the same as the plane taxied down the runway. And, the occupants left the sunshades in the windows even after the Defendant-Airplane was moved into the Choice Aviation hangar for the night. This was unusual because other pilots typically placed sunshades into their windows only in the summer when their planes were sitting outside. Third, the occupants of the Defendant-Airplane paid for fuel and other Choice Aviation services with cash, which was unusual. Fourth, although it was

> customary for pilots to radio the airport prior to landing, the occupants of the Defendant- Airplane did not do so when they landed on February 27th. And, when the pilot of the Defendant-Airplane had used his radio, he did not identify his plane by its tail number which was unusual and suggested that the pilot did not want to identify himself on recorded radio transmissions. Fifth, no record of a Federal Aviation Administration registration for the Defendant-Airplane could be found. Finally, the occupants of the Defendant-Airplane were flying under "visual flight rules" which means they did not need to file a flight plan and could not be tracked[,]

Claimant admits that Defendant-Airplane had previously landed at the airport in November 2013, that the pilot flew out of the airport at 8:00p.m.; that the pilot paid cash for fuel; that the occupant, per standard procedure in cold weather, placed sunshades into the windows of the Defendant Airplane in November 2013 and on February 27, 2014; that sunshades were left up overnight on February 27 2014; that on February 27, 2014 the pilot used his radio to identify his aircraft by visual descriptors; and that the pilot was flying under visual flight rules. Claimant denies that in November 2013, pilot Scott Lewis asked if he could stay with his plane overnight in the Choice Aviation facility, that he was told he could not stay overnight and then immediately paid cash for fuel and de-icing and then flew out of the airport heading west into a snowstorm; that when the Defendant-Airplane landed at the airport, the occupant immediately placed sunshades into the windows so no one could see into the plane (either in November 2013 or on February 27, 2014); that placing the shades was unusual because other pilots typically placed sunshades into their windows only in the summer when their planes were sitting outside; that paying for fuel or other services in cash in unusual; that the occupants of the Defendant-Airplane did not radio the airport prior to landing on February 27th; and that a pilot not identifying his plane by its tail number was unusual and/or suggested that the pilot did not want to identify himself on recorded radio transmissions. In regards to the remaining allegation/s contained in the paragraph of the Complaint quoted immediately above, Claimant lacks

sufficient information to form a belief as to the truth of the allegations contained therein, and, on those grounds, denies each and every allegation contained therein.

In response to the allegations (Doc. 1 at p. 5) that:

> The Choice Aviation director further reported that there were two men (who were later identified as pilot Scott Lewis and passenger Gilbert Wiles) in the Defendant-Airplane when it landed on February 27, 2014. Lewis and Wiles appeared to be traveling west but could not continue because of the weather that day. They paid for fuel and airplane storage fees with one- hundred dollar bills. Lewis gave the name "Ken Howard" and a contact phone number to the airport staff[,]

Claimant admits that two men, Scott Lewis and Gilbert Wiles, were in the Defendant-Airplane when it landed on February 27, 2014; that Lewis and Wiles appeared to be traveling west but could not continue because of the weather that day; and that Lewis gave the name "Ken Howard" and a contact phone number to the airport staff. In regards to the remaining allegation/s contained in the paragraph of the Complaint quoted immediately above, Claimant lacks sufficient information to form a belief as to the truth of the allegations contained therein, and, on those grounds, denies each and every allegation contained therein.

In response to the allegations (Doc. 1 at p. 5) that:

> The police investigation revealed that Choice Aviation staff called a Holiday Inn shuttle for Lewis and Wiles so they could stay the night at the hotel. According to the hotel shuttle driver, Lewis and Wiles had a rolling suitcase and two duffel bags. When the driver was loading Lewis and Wiles' luggage into the shuttle, they would not let him touch one of the duffel bags even though they let him load the other two bags. At the Holiday Inn, Lewis and Wiles checked in under the name "Ken Howard" and paid cash for one room. They requested an HDMI cable from room service. When hotel staff delivered the cable, Lewis or Wiles opened the room door only enough to slide the cable through and no further.

Claimant admits that Choice Aviation staff called a Holiday Inn shuttle for Lewis and Wiles so they could stay the night at the hotel; that Lewis and Wiles had three pieces of luggage between

the two of them; that at the Holiday Inn, Lewis and Wiles checked in under the name "Ken Howard" and paid cash for one room; and that they requested an HDMI cable from room service. Claimant deny that, when the driver was loading Lewis and Wiles' luggage into the shuttle, they would not let him touch one of the duffel bags even though they let him load the other two bags and deny that, when hotel staff delivered the cable, Lewis or Wiles opened the room door only enough to slide the cable through and no further. In regards to the remaining allegation/s contained in the paragraph of the Complaint quoted immediately above, Claimant lacks sufficient information to form a belief as to the truth of the allegations contained therein, and, on those grounds, denies each and every allegation contained therein.

In response to the allegations (Doc. 1 at p. 6) that:

At 7:45p.m. on February 27, 2014, Powell (Wyo.) police officer Reece McLain and his narcotics detection canine Zeke arrived at the Choice Aviation hangar to assist Cody police officers in their investigation. Officer McLain and Zeke had been recently certified in narcotics detection by the National Police Canine Association on January 21, 2014. Officer McLain deployed Zeke around the Defendant-Airplane. Canine Zeke sniffed the left-side and right-side doors of the plane and sat at each door. This indicated that Zeke had detected the odor of a controlled substance coming from the Defendant-Airplane[,]

Claimant lacks sufficient information to form a belief as to the truth of the allegations contained therein, and, on those grounds, denies each and every allegation contained therein.

In response to the allegations (Doc. 1 at p. 6) that:

Cody police detective Ron Parduba then applied for, and received, Wyoming state court search warrants for the Defendant-Airplane and Lewis and Wiles' hotel room. At approximately 10:00 a.m. on February 28, 2014, Wyoming law enforcement officers detained Scott Lewis in the Holiday Inn restaurant. Officers identified Lewis by his Colorado driver's license. Shortly thereafter, officers. entered the hotel room where they found and detained Wiles, who was identified by his Colorado identification card[,]

the two of them; that at the Holiday Inn, Lewis and Wiles checked in under the name "Ken Howard" and paid cash for one room; and that they requested an HDMI cable from room service. Claimant deny that, when the driver was loading Lewis and Wiles' luggage into the shuttle, they would not let him touch one of the duffel bags even though they let him load the other two bags and deny that, when hotel staff delivered the cable, Lewis or Wiles opened the room door only enough to slide the cable through and no further. In regards to the remaining allegation/s contained in the paragraph of the Complaint quoted immediately above, Claimant lacks sufficient information to form a belief as to the truth of the allegations contained therein, and, on those grounds, denies each and every allegation contained therein.

In response to the allegations (Doc. 1 at p. 6) that:

At 7:45p.m. on February 27, 2014, Powell (Wyo.) police officer Reece McLain and his narcotics detection canine Zeke arrived at the Choice Aviation hangar to assist Cody police officers in their investigation. Officer McLain and Zeke had been recently certified in narcotics detection by the National Police Canine Association on January 21, 2014. Officer McLain deployed Zeke around the Defendant-Airplane. Canine Zeke sniffed the left-side and right-side doors of the plane and sat at each door. This indicated that Zeke had detected the odor of a controlled substance coming from the Defendant-Airplane[,]

Claimant lacks sufficient information to form a belief as to the truth of the allegations contained therein, and, on those grounds, denies each and every allegation contained therein.

In response to the allegations (Doc. 1 at p. 6) that:

Cody police detective Ron Parduba then applied for, and received, Wyoming state court search warrants for the Defendant-Airplane and Lewis and Wiles' hotel room. At approximately 10:00 a.m. on February 28, 2014, Wyoming law enforcement officers detained Scott Lewis in the Holiday Inn restaurant. Officers identified Lewis by his Colorado driver's license. Shortly thereafter, officers. entered the hotel room where they found and detained Wiles, who was identified by his Colorado identification card[,]

Claimant admits that at approximately 10:00 a.m. on February 28, 2014, Wyoming law enforcement officers detained Scott Lewis in the Holiday Inn restaurant; that officers identified Lewis by his Colorado driver's license and that, thereafter, officers entered the hotel room where they found and detained Wiles, who was identified by his Colorado identification card. In regards to the remaining allegation/s contained in the paragraph of the Complaint quoted immediately above, Claimant lacks sufficient information to form a belief as to the truth of the allegations contained therein, and, on those grounds, denies each and every allegation contained therein.

> In response to the allegations (Doc. 1 at p. 6) that:
>
> Police officers then searched the hotel room. The officers discovered a blue duffel bag hidden in a dresser drawer under clothing. Inside this duffel bag, officers found $258,520 in $20 bills and $100 bills packaged into 12 vacuum-sealed bags. Handwritten notes on each vacuum- sealed bag indicated the amount of money in each bag and "Deposit I" or "Deposit II." Another handwritten paper note inside the duffel bag recorded "Deposit I $95,000" and "Deposit II $163,520" and "Total $258,520." On top of the same dresser, officers discovered another $1,467, most of which was denominated in $20 bills found in a jacket lying on the dresser. These moneys are the Defendant-Currency in this action[,]

Claimant admits that police officers entered and searched his hotel room and, from therein, seized the Defendant-Currency in this action. In regards to the remaining allegation/s contained in the paragraph of the Complaint quoted immediately above, Claimant lacks sufficient information to form a belief as to the truth of the allegations contained therein, and, on those grounds, denies each and every allegation contained therein.

> In response to the allegations (Doc. 1 at p. 7) that:
>
> In addition to the Defendant-Currency, officers found and seized two laptop computers, six electronic storage devices, fifteen cellphones, and three fake Idaho driver's licenses. Each of the fake driver's licenses had a picture of Scott Lewis but showed a different name, one of which was "Kenneth Howard[,]"

Claimant lacks sufficient information to form a belief as to the truth of the allegations contained therein, and, on those grounds, denies each and every allegation contained therein.

> In response to the allegations (Doc. 1 at p. 7) that:
>
> Meanwhile, at approximately 10:30 a.m., police officers served the search warrant on the Defendant-Airplane. Officers did not find any controlled substances but found (among other things) sleeping bags, portable toilets and other items which suggested that Lewis and Wiles had been living out of the plane. Officers also looked for but did not find any registration documents for the Defendant-Airplane or any pilot's license for Lewis or Wiles[,]

Claimant admits that no controlled substances were on Defendant airplane and that sleeping bags and portable toilets were on said airplane. In regards to the remaining allegation/s contained in the paragraph of the Complaint quoted immediately above, Claimant lacks sufficient information to form a belief as to the truth of the allegations contained therein, and, on those grounds, denies each and every allegation contained therein.

> In response to the allegations (Doc. 1 at p. 7) that:
>
> Gilbert Wiles was released in the afternoon on February 28, 2014. Wiles then asked if he could have his jacket which he said contained $300 to $400. Detective Parduba informed Wiles that the jacket and money had been seized as evidence. Wiles did not ask about any of the other Defendant-Currency[,]

Claimant admits that Gilbert Wiles was released in the afternoon on February 28, 2014. In regards to the remaining allegation/s contained in the paragraph of the Complaint quoted immediately above, Claimant lacks sufficient information to form a belief as to the truth of the allegations contained therein, and, on those grounds, denies each and every allegation contained therein.

> In response to the allegations (Doc. 1 at p. 7) that:
>
> Scott Lewis was charged with a state of Wyoming misdemeanor and made an initial court appearance on March 3, 2014. During that appearance, Lewis claimed that he had been working part-time at a hotel in Denver for the last two years and

had no money to hire an attorney. Lewis was released on March 3rd and contacted Cody police regarding some of the property seized from the hotel room. Although he asked about other property, Lewis did not ask about any of the Defendant-Currency[,]

Claimant admits that Scott Lewis was charged with a state of Wyoming misdemeanor and made an initial court appearance on March 3, 2014; that he claimed he had been working at a hotel in Denver for the last two years and at the time did not believe he had enough money to hire an attorney; that Lewis was released on March 3rd; and that he contacted Cody police to ask only about his jacket, identification and a change of clothes and not anything about the pending actions.

In response to the allegations (Doc. 1 at p. 8) that:

On March 3, 2014, Cody police officers took the Defendant-Currency to First Bank of Wyoming. There, the currency was counted and the bank issued a cashier's check for $259,717 made out to U.S. Customs and Border Protection. On March 4, 2014, DHS-HSI special agent Jim Hasskamp met with detective Parduba and took possession of evidence seized from the hotel room and the Defendant-Airplane, including the $259,717 cashier's check representing the Defendant-Currency. This check was later deposited into a U.S. Customs and Border Protection seizure account pending forfeiture.
Also on March 4th, SA Hasskamp inventoried the contents of the Defendant-Airplane and made arrangements for the plane to be turned over to a contractor under a U.S. Customs and Border Protection consignment order. Under this consignment order, the Defendant-Airplane is currently located at Spirit Mountain Aviation in Cody, Wyoming, pending forfeiture[,]

Claimant lacks sufficient information to form a belief as to the truth of the allegations contained therein, and, on those grounds, denies each and every allegation contained therein.

In response to the allegations (Doc. 1 at pp. 8-9) that:

Further investigation revealed that Gilbert Wiles on or about May 2013 had negotiated the purchase of the Defendant-Airplane from Mr. Mark Pollack of Skydive Temple LLC. Wiles and Scott Lewis then met Pollack in a hotel room in Austin, Texas, where they paid $130,000 in cash for the Defendant-Airplane. The bill of sale listed the purchaser as an entity called Morris Point LLC with an

>address in Santa Fe, New Mexico. Incorporation records show that Morris Point LLC was organized in December 2012 by an individual using an address in the Canary Islands. Morris Point LLC's registered agent is listed as Somerset Systems LLC with an address in Santa Fe, New Mexico. Somerset Systems LLC's corporate mailing address is also in the Canary Islands. Investigators believe that these entities were created using the services offered at www.jjluna.com and www.senoritarosie.com, which websites promote the privacy benefits of New Mexico LLC's and "ghost addresses" in the Canary Islands[,]

Claimant admits that Gilbert Wiles on or about May 2013 had negotiated the purchase of the Defendant-Airplane from Mr. Mark Pollack of Skydive Temple LLC; that the bill of sale listed the purchaser as an entity called Morris Point LLC with an address in Santa Fe, New Mexico; that Morris Point LLC was organized in December 2012 by an individual using an address in the Canary Islands; that Morris Point LLC's registered agent is listed as Somerset Systems LLC with an address in Santa Fe, New Mexico; and that Somerset Systems LLC's corporate mailing address is also in the Canary Islands. In regards to the remaining allegation/s contained in the paragraph of the Complaint quoted immediately above, Claimant lacks sufficient information to form a belief as to the truth of the allegations contained therein, and, on those grounds, denies each and every allegation contained therein.

>In response to the allegations (Doc. 1 at p. 9) that:
>
>Further investigation also revealed that Scott Lewis was convicted in November 2010 of a misdemeanor violation of California Health & Safety Code § 11366.5, which law prohibits renting, leasing, or making available for use any building, room, space or enclosure for the purpose of unlawfully manufacturing, storing or distributing any controlled substance for sale or distribution. This conviction resulted from Lewis's August 2010 arrest outside a home in Eureka, California, where officers seized 185 pounds of marijuana and $261,122 (the majority of which was packaged in vacuum-sealed bags)[,]

Claimant admits that Scott Lewis was convicted in November 2010 of a misdemeanor violation of California Health & Safety Code § 11366.5; and that the conviction resulted from Lewis's August 2010 arrest outside a home in Eureka, California. In regards to the remaining allegation/s

contained in the paragraph of the Complaint quoted immediately above, Claimant lacks sufficient information to form a belief as to the truth of the allegations contained therein, and, on those grounds, denies each and every allegation contained therein.

In response to the allegations (Doc. 1 at p. 9) that:

Under the agency's administrative forfeiture authority, U.S. Customs and Border Protection sent notice of intent to forfeit the Defendant-Airplane and the Defendant-Currency to Gilbert Wiles, Scott Lewis, and Morris Point LLC. On May 5, 2014, the agency received seized asset claim forms signed by Mr. Lewis which claimed an ownership and a possessory interest in all or part of the Defendant-Airplane and the Defendant-Currency[,]

Claimant admits that U.S. Customs and Border Protection sent notice of intent to forfeit the Defendant-Airplane and the Defendant-Currency to Scott Lewis and that Scott Lewis signed and filed a claim on or about May 5, 2014 which asserting an ownership and a possessory interest in all or part of the Defendant-Airplane and the Defendant-Currency.  In regards to the remaining allegation/s contained in the paragraph of the Complaint quoted immediately above, Claimant lacks sufficient information to form a belief as to the truth of the allegations contained therein, and, on those grounds, denies each and every allegation contained therein.

IN ADDITION, Claimant raises the following numbered defenses to the government's forfeiture complaint:

FIRST AFFIRMATIVE DEFENSE

As a separate and affirmative defense to the Complaint on file herein, Claimant alleges that said Complaint is subject to dismissal pursuant to Fed.R.Civ.P. 12(b) and/or for noncompliance with Rule G of The Supplemental Rules For Admiralty Or Maritime Claims and Asset Forfeiture Actions.

SECOND AFFIRMATIVE DEFENSE

As a further separate and affirmative defense to the Complaint on file herein, Claimant alleges that plaintiff lacked any probable cause for either the institution of this forfeiture suit (19 U.S.C. § 1615) and/or the seizure of defendant property.

### THIRD AFFIRMATIVE DEFENSE

As a further separate and affirmative defense to the Complaint on file herein, Claimant alleges that the seizure and arrest of the property claimed to be subject to forfeiture by plaintiff was made in violation of Claimant's Fourth Amendment rights and/or the Due Process Clause of the Fifth Amendment of the United States Constitution. Consequently, all of the evidence seized and the fruits thereof must be suppressed pursuant to applicable case law and/or Rule G (8)(a) of the Supplemental Rules For Admiralty Or Maritime Claims And Asset Forfeiture Actions.

### FOURTH AFFIRMATIVE DEFENSE

As a further separate and affirmative defense to the Complaint on file herein, Claimant alleges that the defendant property was derived from legitimate activities and thus, Claimant has an innocent interest in said property.

### FIFTH AFFIRMATIVE DEFENSE

As a further separate and affirmative defense to the Complaint on file herein, Claimant alleges that this court lacks jurisdiction over the subject matter of plaintiff's complaint and defendant property.

### SIXTH AFFIRMATIVE DEFENSE

As a further separate and affirmative defense to the Complaint on file herein, Claimant alleges that the government's forfeiture claim is void and unenforceable as violative of the United States Constitution, in that it would result in the taking of property without due process of law, and without just compensation, in violation of the Fifth Amendment to the United States

Constitution.

## SEVENTH AFFIRMATIVE DEFENSE

As a further separate and affirmative defense to the Complaint on file herein, Claimant alleges that the government's forfeiture claim is void and unenforceable as violative of the United States Constitution, in that the forfeiture of Claimant's interest in the subject property would amount to a cruel and unusual punishment, in violation of the Eighth Amendment to the United States Constitution.

## EIGHTH AFFIRMATIVE DEFENSE

As a further separate and affirmative defense to the Complaint on file herein, Claimant alleges that the government's forfeiture claim is void and unenforceable as violative of the United States Constitution, in that the forfeiture of Claimant's interest in the subject property would amount to an excessive fine in violation of the Eighth Amendment to the United States Constitution.

## NINTH AFFIRMATIVE DEFENSE

As a further separate and affirmative defense to the Complaint on file herein, Claimant alleges that the government's forfeiture claim is void and unenforceable as violative of the United States Constitution, in that Claimant was denied notice and opportunity to be heard prior to the seizure of defendant property or the initiation of this forfeiture action, in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution.

## TENTH AFFIRMATIVE DEFENSE

As a further separate and affirmative defense to the Complaint on file herein, Claimant alleges that the seizure and arrest of the property claimed to be subject to forfeiture was made in violation of the Fourth Amendment to the Constitution and the Right to Financial Privacy Act.

ELEVENTH AFFIRMATIVE DEFENSE

As a further separate and affirmative defense to the Complaint on file herein, Claimant alleges that the seizure and arrest of the property claimed to be subject to forfeiture was made in violation of Article I, Section 1 and Section 8, Clause 18, of the United States Constitution, being founded upon an unlawful delegation of legislative power.

TWELFTH AFFIRMATIVE DEFENSE

As a further separate and affirmative defense to the Complaint on file herein, Claimant alleges that 21 U.S.C. § 881 is unconstitutional and unenforceable, in that it constitutes a denial of Claimants' due process and equal protection rights under the United States Constitution.

THIRTEENTH AFFIRMATIVE DEFENSE

As a further separate and affirmative defense to the Complaint on file herein, Claimant alleges that the defendant property was not proceeds of, or used or intended to be used to facilitate, any violation of law, nor was it furnished or intended to be furnished in exchange for any controlled substance or listed chemical, that would subject the property to forfeiture pursuant to any law.

FOURTEENTH AFFIRMATIVE DEFENSE

As a further separate and affirmative defense to the Complaint on file herein, Claimant alleges that pursuant to the Due Process Clause of the United Sates Constitution and plaintiff's statutory obligation to initiate this action promptly from the time of discovery of any facts giving rise to the government's claim and/or to commence trial promptly from the time of seizure or filing, plaintiff is barred from bringing this forfeiture action by its unnecessary delay.

**PLEASE TAKE NOTICE THAT CLAIMANT DEMANDS TRIAL BY JURY OF THE ISSUES AND DEFENSES RAISED BY HIS CLAIM AND ANSWER.**

WHEREFORE, Claimant SCOTT MICHAEL LEWIS prays that this Court will:

1. Dismiss plaintiff's Complaint and enter a judgment on behalf of Claimant.

2. Order that all property seized, and the fruits thereof, be suppressed as evidence in this case, and order that all items seized from Claimant's possession, actual or constructive, be suppressed as evidence in this and any other proceeding.

3. Order that all of defendant property be released and surrendered to Claimant forthwith.

4. Denies issuance of a certificate of probable cause pursuant to 28 U.S.C. § 2465 and award costs and attorney fees to Claimant.

5. Provide such other and further relief as this court deems proper and just.

Respectfully submitted,

Dated: 3 October 2014

*s/David M. Michael*
DAVID M. MICHAEL
LAW OFFICES OF DAVID M. MICHAEL
Attorney for Claimant

## **CERTIFICATE OF ELECTRONIC FILING**

The undersigned hereby certifies that, on 3 October 2014, he caused to be electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

AUSA ERIC J.HEIMANN
Office of the U.S. Attorney
District of Wyoming
P.O. Box 668
Cheyenne, Wyoming 82003
Eric.Heimann@usdoj.gov

                                         *S/David M. Michael*__
                                         DAVID M. MICHAEL
                                         EDWARD M. BURCH
                                         One Sansome Street, Suite 3500
                                         San Francisco, CA 94104

                                         Attorneys for Claimant
                                         SCOTT MICHAEL LEWIS