DAVID M. MICHAEL, CSBN 74031
EDWARD M. BURCH, CSBN 255470
Law Offices of David M. Michael
One Sansome Street, Suite 3500
San Francisco, CA 94104
Telephone:    (415) 946-8996


JOE D. BUSTOS
400 E 20th Street
Cheyenne, WY 82001
Telephone:    (307) 638-4633

Attorneys for Defendant
SCOTT MICHAEL LEWIS


UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>v.<br><br>One Cessna Airplane, Model Number TU-206, bearing Tail Number N6214V and Serial Number U206-1189, and<br><br>$259,717 United States Currency,<br><br>     Defendants,<br><br>SCOTT MICHAEL LEWIS,<br><br>     Claimant. | **Civil Case No.: 2:14-cv-00151-ABJ** |

### CLAIMANT'S MOTION TO SUPPRESS and/or TO QUASH SEARCH WARRANT PURSUANT TO THE FOURTH AMENDMENT and/or SUPP. RULE G(8)(a) and REQUEST FOR EVIDENTIARY HEARING; MEMORANDUM and DECLARATION OF COUNSEL IN SUPPORT [Exhibits filed concurrently hereto]

1

Claimant Scott Lewis, by and through counsel, hereby moves this Court for an order suppressing all evidence obtained as a result of the illegal search of his hotel room and airplane, and illegal seizure of Defendant currency and/or Claimant himself, which occurred on or about February 28, 2014 in Cody, Park County, Wyoming, and/or to quash the warrant as to the same.

The motion to suppress evidence obtained, tangible and intangible, as a result of the unlawful searches/seizures is made pursuant to the Fourth Amendment of the United States Constitution and Rule G(8)(a), Supplemental Rules For Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule G"). This motion is made on the specific grounds that the search warrant affidavit did not provide probable cause sufficient to justify the searches that occurred and that the drug dog was not reliable.

This motion is based on this notice and motion, the memorandum of law, declaration, and exhibits in support filed concurrently hereto, evidence to be adduced and argument presented at the hearing/s on this motion, and such further argument and points and authorities as may later be presented to this Court regarding said motion.

<u>**MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS / QUASH**</u>

Claimant has both a Constitutional and <u>statutory</u> right to have evidence gained through a search that was violative of the Fourth Amendment suppressed in this civil forfeiture case. The judicially created good faith exception which in certain circumstances permits introduction of illegally obtained evidence in criminal cases does <u>not</u> apply to civil forfeiture actions in light of Rule G(8)(a), and even if it did, it's application would not be warranted under the facts here.

The drug dog was not reliable and in any event the warrant affidavit did not provide probable cause for the search of Claimant' hotel room.

## I.     BRIEF STATEMENT OF RELEVANT FACTS

On or about February 27, 2014, Claimant Scott Lewis, along with a passenger, flew a

plane into Yellowstone Regional Airport in or near Cody, Wyoming. [1]

On that date, an employee of "Choice Aviation," contacted local law enforcement to report that the plane was "suspicious." Detective Ronald Parduba of the Wyoming Police Department then contacted the employee who indicated that the plane had flown into the airport a few months earlier (November 2013) and the employee also found it vaguely suspicious then, stating that whoever flew the plane then had requested to stay the night at the facility but this was not permitted, so this pilot flew out in "increment" weather after paying for services with $100 bills, and the plane's windows had been covered with shades while at the facility.

On February 27, 2014, the plane, as noted, arrived a second time at the airport and whoever was piloting this time "did not report on the radio", put the shades up on the side windows while taxiing, and put the shades on the front windshield once stopped. However, the employee admitted to Detective Parduba that reporting on the radio was not required but was only done as a courtesy. The employee stated that there had been two males in the plane who had booked a room at the local Holiday Inn because weather conditions did not allow them to proceed with their travel. The employee stated that the plane was old and was designed for moving cargo, so that was suspicious and warranted contacting the police. The employee indicated that the plane was in their hangar. The employee also pointed out that it appeared that there was an aftermarket modification of the plane (a hatch on the underside).

Detective Parduba then contacted a police officer with a drug detection dog, and the dog was eventually taken to the plane and "alerted to the odor of narcotics coming from the plane" on both the left and right side of the plane. [2]

---

[1] The facts stated here are derived from the search warrant affidavits, filed concurrently hereto as Exhibit 1 & 2. Claimant does not accept these facts as true, but applicable law requires the court to look to the affidavit when assessing whether to quash a warrant, so Claimant presents the facts as they are presented in the affidavits.

[2] While the affidavit indicates that the dog had been "certified" a month prior to the alleged alert, it remains to be seen if the dog is sufficiently trained and reliable to be considered for

Detective Parduba spoke with another Choice Aviation employee who indicated that the two males had bags with them, and one of them "looked heavy". Detective Parduba then went to the Holiday Inn, where he spoke with the manager, who confirmed that two males had been picked up via shuttle from Choice Aviation and checked in to the hotel.

Later, a different police officer contacted the hotel manager again, and the manager said she talked to the driver of the shuttle bus, who told her that the males declined help for one of the bags but allowed the driver to help with the other two bags. The manager indicated that the males' room was paid for with cash, that they went  "immediately to their room with their bags and have not left", that they put a "do not disturb" sign up, and requested room service deliver an HDMI cable. The manager stated that when the cable was delivered to the room, one of the males opened the door "just enough to slide the cable through and then tipped the employee."

Detective Parduba learned from the original Choice Aviation employee that the males "intended to fly out of Cody at approximately 0700 hours, Friday February 28, 2014", and then, by expressing his belief that the two males were generally involved with illegal drug trafficking, Parduba applied for and obtained a warrant for the search of the plane and the males' hotel room.

Detective Parduba's investigative report [3] indicates that on February 28, 2014 at 10:00a.m., law enforcement located one of the males (who turned out to be Claimant) in the Holiday Inn restaurant. Claimant refused to answer questions and asked for an attorney, and was detained. Law enforcement executed the warrant for the hotel room at 10:15a.m., finding and seizing the Defendant property and other evidence which Claimant seeks to suppress here. At 10:30a.m., law enforcement executed the search warrant for the plane, failing to find any drugs, nullifying the credibility of the earlier alleged dog alert.

---

probable cause, and Claimant herein, as will be discussed, specifically challenges the dog's reliability.

[3] Filed as Exhibit 3, concurrently hereto.

The case was "adopted" by United States Customs and Border Protection [4] later that day, and on or about May 4, 2014, Claimant filed administrative claims with that agency, claiming ownership of the Defendant currency and airplane.

On August 1, 2014, the government instituted this case by filing a complaint for forfeiture alleging that both of the seized Defendant properties are subject to forfeiture for being connected to illegal drug trafficking. On September 3, 2014, Claimant filed his judicial claim opposing forfeiture, stating under oath the he owned, and had a possessory interest in all or part of the defendant property. On October 3, 2014, Claimant filed his answer to the complaint along with a demand for trial by jury. In contested motions, this Court has found that Claimant has standing here, and the case was stayed for several months. The stay has now been lifted and Claimant moves to suppress evidence and quash the search warrant for violations of the Fourth Amendment.

## II.   AUTHORITIES AND ARGUMENT

Claimant moves for the suppression of evidence obtained as a result of the illegal searches that occurred here, and specifically challenges the reliability of the drug dog and contends that the search warrant for the hotel room was not supported by probable cause.

---

[4] This means that the local law enforcement agencies involved in the seizure of Claimant's property could, and likely will, retain 80% of its value if it is ultimately forfeited by the federal government. *See, e.g., U.S. v. $186,416,* 590 F.3d 942, 953 (9th Cir. 2010); *U.S. v. $178,858.00,* 2014 U.S. App. LEXIS 10045 (11th Cir. May 30, 2014) ("The forfeiture proceeds were disbursed via the federal 'equitable sharing' program, with 80% awarded to the [Birmingham Police Department] and 20% retained by the United States.") (citing United States' Answer Brief). Notably, such blatant financial incentivizing of law enforcement has, after much public discontent, led to this practice being now generally prohibited. *See, e.g.,* http://www.justice.gov/opa/pr/attorney-general-prohibits-federal-agency-adoptions-assets-seized-state-and-local-law ; *U.S. v. $67,040.00,* 2015 U.S. Dist. LEXIS 39471, *11 (W.D.N.C. Mar. 27, 2015) (taking judicial notice of the fact that on January 16, 2015, then U.S. Attorney General Eric Holder announced a major policy change to prohibit federal agency adoptions of state and local seizures, except for very limited reasons). Had this 2014 seizure occurred one year later, the present civil forfeiture action would have been prohibited and barred.

**A.      Evidence Tainted By A Fourth Amendment Violation Must Be Excluded In Civil Forfeiture Cases, and The *Leon* Good Faith Exception Does Not Apply Here**

Case law has <u>long</u> reflected that the Fourth Amendment applies to bar introduction of evidence tainted by a Fourth Amendment violation in civil forfeiture cases[5] because such cases are quasi-criminal and have at least the effect of government imposed punishment upon the individual. *See e.g., One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693 (1965); *U.S. v. $73,277 U.S. Currency*, 710 F.2d 283, 287 fn. 6 (7th Cir. 1983); *U.S. v. $149,442.00*, 965 F.2d 868, 872 (10th Cir. 1992) (*citing U.S. v. $ 3,799.00*, 684 F.2d 674, 677 (10th Cir. 1982) and *Bramble v. Richardson*, 498 F.2d 968 (10th Cir. 1974), cert. denied, 419 U.S. 1069, 95 S. Ct. 656, 42 L.Ed.2d 665 (1974)); *U.S. v. $186,416.00,* 590 F.3d 942, 949 (9th Cir. 2010).

The Ninth Circuit has noted that "that the exclusionary rule is particularly well-suited to advance both of [the rule's] goals [of deterrence and judicial integrity] in the context of civil forfeiture proceedings" because (1) "the government has a substantial financial stake in drug forfeitures" and applying the exclusionary rule "protects judicial integrity by ensuring that the courts do not serve as a conduit through which the government fills its coffers at the expense of those whose constitutional rights its agents violated" and (2) "exclusion of evidence in forfeiture proceedings is without the major societal cost associated with exclusion in criminal cases: setting a criminal free ... [and the] only tangible cost to society from excluding evidence in [a civil forfeiture case] is monetary, a far less compelling reason to restrict the rule's application than the risk of freeing a guilty party." *$ 186,416.00, supra,* 590 F.3d 942, 950.

---

[5] It might also be noted that the Fourth Amendment's requirements now appear in the plain language of the applicable civil forfeiture statutes. 18 U.S.C. § 981(b)(2)(B) of the Civil Asset Forfeiture Reform Act of 2000 specifically requires seizures be made pursuant to a warrant, or be based upon probable cause and made pursuant to a lawful search or arrest; and § 981(b)(2)(C) requires that property transferred to the Federal agency must have been lawfully seized.

Rule G was adopted in 2006, applies to forfeiture cases such as the present,[6] and specifically provides, in relevant part,

> (a) *Motion To Suppress Use of the Property as Evidence*. If the defendant property was seized, a party with standing to contest the lawfulness of the seizure may move to suppress use of the property as evidence. ...

Rule G(8)(a). Thus, there is no doubt that evidence tainted by a Fourth Amendment violation must be suppressed in civil forfeiture cases like the present.

Moreover, in civil forfeiture cases - unlike in criminal cases - the so called *Leon* [7] good faith exception does not apply to permit the introduction of seized defendant properties tainted by a Fourth Amendment violation. This is because suppression of evidence per Rule G is <u>not</u> a <u>judicially created</u> remedy that the <u>judiciary</u> can modify (as per *Leon*), but instead is a remedy explicitly created by Congress which gives claimants an absolute right to have illegally seized defendant properties suppressed and not "used" in civil forfeiture actions. This statutory remedy is not subject to judicial modification.

Courts displaying their aversion to the exclusionary rule have been quick to emphasize:

> The rule announced in *Leon* was borne out of a lengthy discussion on the social costs and benefits of the exclusionary rule. [ ] The Supreme Court explained that "[t]he Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands," and that the exclusionary rule developed as "'a judicially created remedy designed to safeguard Fourth Amendment rights . . . .'" [ ] Because the <u>exclusionary rule is a judicial remedy, it is within the judiciary's province to determine when the rule applies</u>. *See id*. at 906-07 (explaining that the question before the Supreme Court was for it to determine when the rule applies by "weighing the costs and benefits"). Thus, the <u>rationale supporting the holding in *Leon* was firmly rooted in the idea that the exclusionary rule is a judicially created remedy</u> used to ameliorate violations

---

[6] Rule G(1) provides: "Scope. This rule governs a forfeiture action in rem arising from a federal statute. To the extent that this rule does not address an issue, Supplemental Rules C and E and the Federal Rules of Civil Procedure also apply."

[7] *See United States v. Leon*, 468 U.S. 897 (1984).

under the Fourth Amendment, and that, <u>as a judicially created remedy, it is subject to judicial modification based on social utility analysis</u>.

*U.S. v. Rice*, 478 F.3d 704, 712 (6th Cir. 2007) (emphases added).

The policy reason for the good faith exception to the exclusionary rule is absent in civil forfeiture actions. As the Seventh Circuit has also noted (in a criminal case):

> The exclusionary rule is designed to deter violations of the fourth amendment. The Supreme Court has concluded that the <u>slight deterrent benefit of excluding evidence</u> derived from searches that were proper when conducted-but held to be invalid in light of later precedent-<u>does not justify the injury to the public weal when criminals go unpunished</u>. *Davis v. United States*, 131 S. Ct. 2419, 2423-24, [ ] (2011), announced this rule: "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule" even if that precedent is later held to be incorrect.

*U.S. v. Brown*, 744 F.3d 474, 476 (7th Cir. 2014) (emphasis added). As noted:

> ... the exclusionary... rule's dual purposes [is] to deter [ ] police misconduct in the future and to preserve the integrity of the courts. ... the exclusionary rule is particularly well-suited to advance both of these goals in the context of civil forfeiture proceedings. ...
>
> Applying the exclusionary rule in forfeiture proceedings [ ] protects judicial integrity by ensuring that the courts do not serve as a conduit through which the government fills its coffers at the expense of those whose constitutional rights its agents violated.
>
> ...Moreover, <u>the exclusion of evidence in forfeiture proceedings is without the major societal cost associated with exclusion in criminal cases: setting a criminal free.</u> Justice Cardozo's famous critique of the exclusionary rule, that it allows "[t]he criminal . . . to go free because the constable has blundered," does not apply to forfeitures. [ ] The only tangible cost to society from excluding evidence in a case like ours is monetary, a far less compelling reason to restrict the rule's application than the risk of freeing a guilty party.

*$186,416.00, supra,* 590 F.3d 942, 950 (emphasis added) (internal citations omitted).

Critically, despite that courts have, in the past, held that the exclusionary rule applies to civil forfeiture actions, <u>Congress</u> explicitly <u>created an independent statutory remedy</u> for a civil

forfeiture claimant who has had "property" "unlawfully" seized from him: "a party with standing to contest the <u>lawfulness of the seizure</u> may move to <u>suppress use of the property as evidence</u>." Rule G(8)(a) (emphasis added).

It is well-established that courts must interpret statutes to avoid rendering portions of them "superfluous" or "pointless." *See e.g., Fuller v. Norton,* 86 F.3d 1016, 1024 (10th Cir. 1996) (citing *U.S. v. Nordic Village, Inc.,* 503 U.S. 30, 36 (1992)). Moreover, "forfeiture statutes are strictly construed against the government" and in favor of claimants. *See, e.g., U.S. v. $191,910.00,* 16 F.3d 1051, 1068 (9th Cir. 1994) (citing *U.S. v. One 1936 Model Ford V-8 Deluxe Coach,* 307 U.S. 219, 226 (1939)); *see also U.S. v. $493,850.00,* 518 F.3d 1159, 1169 (2008) ("It is [ ] <u>well-established</u> that 'forfeiture statutes are strictly construed against the government.' "); *U.S. v. One 1977 Cadillac Coupe De Ville,* 644 F.2d 500, 501 (5th Cir. 1981); *U.S. v. 7215 Longboat Drive,* 750 F.3d 968, 974 (8th Cir. 2014); *U.S. v. Charles D. Kaier Co.,* 61 F.2d 160, 162 (3d Cir. 1932).

Using those canons, because the judicially created exclusionary rule (derived from the Fourth Amendment) had previously been applied to civil forfeiture actions <u>prior</u> to the enactment of Rule G in 2006, Rule G(8)(a) <u>must</u> be interpreted to create an independent <u>Congressionally created</u> (i.e. statutory) right to have "[un]lawful[ly] ... seiz[ed]" property not "use[d]" in civil forfeiture actions, in addition to and distinct from the judicially created remedy of having the direct or indirect evidence of an illegal search or seizure not admitted in a federal prosecution. *See Stone v. Powell*, 428 US 465, 483 (1976); *Wong Sun v. United States*, 371 US 471, 485-6 (1963). This <u>Congressiona</u>lly created <u>remedy</u> of Rule G(8)(a) is <u>not subject to the judicial modification of *Leon, Davis*, and other good faith exceptions to the exclusionary rule cases</u>.

Strictly construing the clear language of Rule G in favor of claimants and against the government so as not to render Rule G(8)(a) superfluous, renders it distinct from the judicially created exclusionary rule, which the judiciary can modify. But, since the right to "suppress [the] use of the property as evidence" in civil forfeitures was created by Congress, the judiciary cannot modify it under a social utility analysis, and consequently *Leon* and its progeny cannot apply to

avoid suppression of seized property here.

**B.      Claimant Has Fourth Amendment Standing**

Claimant has standing to challenge the searches and seizures at issue here.[8]

The Fourth Amendment guarantees freedom from unreasonable searches and seizures. The capacity to claim protection of the Fourth Amendment, had in recent years, depended upon whether the person who claims the protection has a legitimate "expectation of privacy" in the place invaded. *Katz v. United States*, 389 U.S. 347, 351-353 (1967); *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). A subjective expectation of privacy was said to be legitimate only if it is "one that society is prepared to recognize as reasonable." *Rakas*, 439 U.S. at 143-144. Under this formulation, a person who has a property or possessory interest in the place searched or the items seized has a legitimate expectation of privacy sufficient to invoke the Fourth Amendment's protections to be free from unreasonable searches and seizures. *See, Id*. at 148; *U.S. v. Padilla*, 508 U.S. 77 (1993).

Under this formulation,[9] Claimant here has standing to challenge the search of his hotel room. *U.S. v. Carr*, 939 F.2d 1442, 1446 (10th Cir. 1991) (defendant had standing to assert constitutional violation when his hotel room was searched).

**C.      The Dog Here Was Not Reliable**

While a drug dog can weigh for a finding of probable cause in theory, the dog must be reliable as demonstrated through his training and field performance records.

_____

[8] It is briefly noted that, unlike a Claimant who makes a Rule G(8)(b) "Motion To Dismiss the Action", <u>a Claimant moving to suppress is not required to establish standing to contest the forfeiture as a prerequisite to making the motion</u>. *Cf. Rule G(8)(b)*(i) ("A claimant who establishes standing to contest forfeiture may <u>move to dismiss</u> the action under Rule 12(b)"). Regardless, Claimant has both claim standing and Fourth Amendment standing to contest the search.

[9] In *U.S. v. Jones*, 132 S. Ct. 945, 952 (2012), the Supreme Court made clear that the expectation of privacy formulation was not the sole test for Fourth Amendment standing, but was *added to* the traditional trespass test to broaden the protection. But this discussion is for another day, because Claimant clearly has standing under the expectation of privacy formulation.

A defendant [ ] must have an opportunity to challenge such evidence of a dog's reliability, whether by cross-examining the testifying officer or by introducing his own fact or expert witnesses. The defendant, for example, may contest the adequacy of a certification or training program, perhaps asserting that its standards are too lax or its methods faulty. So too, the defendant may examine how the dog (or handler) performed in the assessments made in those settings. Indeed, evidence of the dog's (or handler's) history in the field, although susceptible to the kind of misinterpretation we have discussed, may sometimes be relevant, as the Solicitor General acknowledged at oral argument. See Tr. of Oral Arg. 23-24 ("[T]he defendant can ask the handler, if the handler is on the stand, about field performance, and then the court can give that answer whatever weight is appropriate"). And even assuming a dog is generally reliable, circumstances surrounding a particular alert may undermine the case for probable cause--if, say, the officer cued the dog (consciously or not), or if the team was working under unfamiliar conditions.

In short, a probable-cause hearing focusing on a dog's alert should proceed much like any other. The court should allow the parties to make their best case, consistent with the usual rules of criminal procedure. And the court should then evaluate the proffered evidence to decide what all the circumstances demonstrate. If the State has produced proof from controlled settings that a dog performs reliably in detecting drugs, and the defendant has not contested that showing, then the court should find probable cause. If, in contrast, the defendant has challenged the State's case (by disputing the reliability of the dog overall or of a particular alert), then the court should weigh the competing evidence.

*Florida v. Harris*, 133 S. Ct. 1050, 1057-1058 (2013). Claimant hereby challenges the reliability of the drug dog used here, and it remains to be seen whether the dog's records, if he has any, will support that he is sufficiently reliable.

**D.    The Affidavit Lacks Probable Cause as to Justify The Search of The Hotel Room**

"The Fourth Amendment requires that search warrants be issued only 'upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized' [so] warrants must be issued by neutral, disinterested magistrates[,] those seeking the warrant must demonstrate to the magistrate their probable cause to believe that 'the evidence sought will aid in a particular apprehension or conviction' for a

particular offense[, and] 'warrants must particularly describe the 'things to be seized,' ' as well as the place to be searched.[ ]" *Dalia v. United States*, 441 U.S. 238, 255 (1979).

In determining if a warrant should be quashed, the Court should look to the supporting affidavit's four corners. *See, e.g., U.S. v. Harvey*, 514 F. Supp. 2d 1257, 1259 (D. Kan. 2007) *(citing Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565 n. 8 (1971); *U.S. v. Beck*, 139 Fed. Appx. 950, 954 (10th Cir. 2005) ).

Claimant submits that here, even assuming the drug dog can be relied upon, there was a clear lack of probable cause to search the hotel room.

Probable cause to search a person's residence is not established solely with probable cause that the person is guilty of a crime, there "must be additional evidence linking the person's home to the suspected criminal activity." *See, e.g., United States v. Harris*, 735 F.3d 1187, 1191 (10th Cir. 2013) (*citing U.S. v. Rowland*, 145 F.3d 1194 (10th Cir. 1998). Whether "a sufficient nexus has been established between a defendant's suspected criminal activity and his residence . . . necessarily depends upon the facts of each case" [and] "a sufficient nexus is established once 'an affidavit describes circumstances which would warrant a person of reasonable caution' in the belief that 'the articles sought' are at a particular place." *U.S. v. Richard*, 350 Fed. Appx. 252, 258 (10th Cir. 2009) (citing cases).

In a recent case, a District Court in Texas found per the above principles that:

… no reasonable agent could rely on the warrant issued in this case because the affidavit in support was 'bare bones' with respect to the nexus between the objects sought and the place to be searched. An agent who relied on the warrant would have to believe that agents, in every single drug-trafficking case, could search a suspect's home merely because they have probable cause to believe that the suspect has engaged in drug trafficking. "If that were so, there would be no reason to distinguish search warrants from arrest warrants" in the large class of drug-trafficking cases. [ ]. That is patently unreasonable. Because the information before the magistrate judge was so lacking in probable cause that no agent could reasonably rely upon the warrant when conducting a search, it necessarily follows that the warrant did not issue upon probable cause.

*U.S. v. Solorio-Hernandez*, 2015 U.S. Dist. LEXIS 72904, *15 (S.D. Tex. June 5, 2015) (citing *U.S. v. Broussard*, 80 F.3d 1025, 1034-35 (5th Cir. 1996); *U.S. v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003) ). *See also State v. Doile*, 244 Kan. 493, 769 P.2d 666 (Kan. 1989) ("no facts were alleged [in the affidavit] indicating any current drug-related activity was occurring at the residence."); *State v. Ratzlaff*, 255 Kan. 738, 877 P.2d 397, 405 (Kan. 1994); *State v. Silvestri*, 136 N.H. 522, 618 A.2d 821, 824 (N.M. 1992) (affidavit in support of a search warrant for defendant's residence contained information from an informant regarding his purchase of marijuana from defendant twice in one week at an undisclosed location but court found no probable cause to search defendant's residence because "informant  [ ] lacked personal knowledge of the presence of drugs in defendant's residence and did not indicate any other circumstances that would support the inference"); *State v. Dalton*, 73 Wash. App. 132, 868 P.2d 873, 876 (Wash. App. 1994) (no information in the affidavit connected defendant's alleged drug trafficking to his home); *Commonwealth v. Way*, 342 Pa. Super. 341, 492 A.2d 1151, 1154 (Pa. Super. 1985); *Commonwealth v. Kline*, 234 Pa. Super. 12, 17 (Pa. Super. Ct. 1975).

Another Court recently found similarly, but inversely, that though there was probable cause to search a particular residence, the affidavit failed to provide the probable cause for all vehicles and persons associated with that residence:

> The affidavit states that in the twenty-four hours prior to submitting their petition NPD used a confidential informant "to make two controlled buys for quantities of Heroin from the above location." [ ] The use of the singular "location" here is key because this sentence is the only place the affidavit could be construed to link narcotics trafficking to anything other than the 114 Honeysuckle Court residence. Every other factual assertion is directly tied to the residence alone. [ ] …only the residence is referenced directly above this statement and it is hardly reasonable to infer that a singular "location" intended to reference four separate areas. Had the affidavit offered that two controlled buys of Heroin were made "from the above location[s] [in transactions conducted by the persons to be searched]," this affidavit may have provided enough [but] [t]his affidavit "completely neglect[s] to indicate why the affiant believed that" the defendants or the vehicles had any connection with either the residence or the narcotics trafficking described

therein.[ ]. Consequently, the the affidavit failed to provide the probable cause necessary to satisfy the Fourth Amendment warrant requirement[.]

*U.S. v. Smith*, 2015 U.S. Dist. LEXIS 128878, *6-7 (E.D. Ky. Sept. 25, 2015) (*U.S. v. Rose*, 714 F.3d 362, 366 (6th Cir. 2013)). Notably, *Smith* went on to find that the government could not avoid exclusion through *Leon's* good-faith exception because by looking to *U.S. v. Laughton*, 409 F.3d 744 (6th Cir. 2005).

In short, the warrant affidavit here was required to provide some facts that would support the inference that drugs or drug related items would be found in Claimant's hotel room. But the affidavit supported the opposite conclusion: a dog alert (if believed) indicated that drugs were in the plane and not in the hotel room, and unlike in other cases where an officer's "professional opinion, based upon extensive experience, that individuals involved in drug activity like Mr. Richard's typically maintain evidence of and/or tools of their illegal activity in their *residence* … was sufficient to establish a nexus" (*Richard*, 350 Fed. Appx. 252, 259 (emphasis added))), the affidavit here contains no such opinion, let alone does it contain such an opinion in specific regard to Claimant's hotel room (as opposed to his residence). *Cf. also, e.g., generally, U.S. v. Stearn*, 597 F.3d 540, 559 (3d Cir. 2010) (discussing "Whitner-Hodge inference" - while it has been said that evidence of involvement in the drug trade is likely to be found where the dealers reside, an issuing judge may infer that a suspected drug dealer is storing evidence of his drug crimes in his residence only if three preliminary premises are met: (1) that the person suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed by, or the domicile of, the dealer; and (3) that the home contains contraband linking it to the dealer's activities.).

No such facts are alleged here in regards to Claimant's hotel room. In fact, there was absolutely no evidence, beyond pure speculation and threadbare suspicions, before the magistrate linking either Claimant or his hotel room to illegal activity.  The information before the magistrate judge was so lacking in probable cause that no agent

could reasonably rely upon the warrant when conducting the search.  It necessarily follows that the warrant did not issue upon probable cause, the warrant must be quashed and the evidence seized from the hotel room suppressed.[10]

## III.    REQUEST FOR AN EVIDENTIARY HEARING

An evidentiary hearing will likely be necessary to resolve contested issues of fact material to the court's determinations of this motion.  Whether an evidentiary hearing is warranted rests within the sound discretion of the district court and may be held even if no facts are in dispute.  *U.S. v. Batiste*, 868 F.2d 1089, 1092 (9th Cir. 1989); *U.S. v. Glass*, 128 F.3d 1398, 1408-1409 (10th Cir. 1997)[11]  However, an evidentiary hearing on a motion to suppress is required if the court concludes from the moving papers that there are contested issues of fact going to the validity of the search in issue, and when there are contested issues of fact requiring an evidentiary hearing, it is an abuse of discretion for the court to deny such a request.  *U.S. v. Dicesare,* 765 F.2d 890, 895 (9th Cir. 1985); *Glass*, *supra*, 128 F.3d 1398, 1409 (citing *U.S. v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986)). Here, there will presumably be many issues of contested fact in regards to at least the drug dog's reliability.

## IV.    CONCLUSION

For the foregoing reasons, Claimant's motion to suppress should be granted and all evidence derived as a result of the illegal search of Claimant's hotel room and plane should be suppressed here.

                                                   Respectfully submitted,

Dated: 2 November 2015

---

[10] There is really no need to seek suppression of any evidence from the airplane, because nothing was found there.  Contrary to the alleged (but now unbelievable) dog alert, there was no drug evidence discovered in the airplane.  Nor was there even any claim of the smell of an illegal substance by the officers present at that search.

[11] In *Batiste*, the court found it appropriate to hold an evidentiary hearing on the basis that "a defendant often does not have complete information regarding his or her arrest at the time a motion to suppress is filed and additionally officer's testimony at a hearing often differs materially from the statements in the police report."  *Id.* at 1092.

*s/David M. Michael*
DAVID M. MICHAEL
LAW OFFICES OF DAVID M. MICHAEL
Attorney for Claimant

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that, on 2 November 2015, I caused to be electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/David M. Michael*_____
DAVID M. MICHAEL