ERIC J. HEIMANN
Assistant United States Attorney
Wyo. Bar # 6-4504
P. O. Box 668, Cheyenne, WY 82003
(307) 772-2124
Eric.Heimann@usdoj.gov

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil No. 14-CV-00151-ABJ** |
| ) | |
| **One Cessna Airplane, Model Number** ) | |
| **TU-206, bearing Tail Number N6214V** ) | |
| **and Serial Number U206-1189,** ) | |
| **and $259,717 United States Currency,** ) | |
| ) | |
| **Defendant-Property.** ) | |
| ) | |
| **SCOTT MICHAEL LEWIS,** ) | |
| ) | |
| **Claimant.** ) | |
| ) | |

### GOVERNMENT'S OPPOSITION TO CLAIMANT'S MOTION TO SUPPRESS

The United States, by and through Assistant United States Attorney Eric Heimann opposes Claimant Scott Lewis's motion to suppress evidence (Doc. 43) and respectfully requests a status conference prior to the December 17th suppression hearing.

### BACKGROUND

In this civil *in rem* action, the United States seeks to forfeit the above-described Defendant-Airplane as a drug conveyance and the Defendant-Currency as drug money. (*See Verified Complaint*, Doc. 1 at 2-3.) The Defendant-Property was seized from the Claimant and Gilbert Wiles, Jr., on February 28, 2014, under authority of a search warrant for the Defendant-

Airplane (*Mot. to Supp.*, Exh. 2 at 17-18 (the Airplane Warrant)) and a second warrant for Lewis and Wiles' hotel room (*id.*, Exh. 2 at 8-9 (the Hotel Warrant)).

### CLAIMANT'S MOTION TO QUASH WARRANTS AND SUPPRESS EVIDENCE

Rule G(8)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims provides that "a party with standing to contest the lawfulness of the seizure may move to suppress use of the property as evidence." Thus, to pursue suppression, a claimant must be a proper party to the forfeiture (*i.e.*, have claim-standing under the Supplemental Rules) and must have constitutional standing under the Fourth Amendment.[1] This Court has found that the Claimant currently may contest this forfeiture although acknowledging that standing may be revisited at later stages of the litigation. (Doc. 26, 7.) The government, therefore, does not concede this issue and reserves the right to challenge Lewis's standing under Rule G or any other law. In particular, the government may seek to strike Lewis's claim and answer (and thereby challenge his claim-standing) based upon his refusal to answer Rule G(6) special interrogatories. (*See Govt's Mot. to Compel*, Doc. 44 (pending motion filed on November 13, 2015).)

In substance, the Claimant alleges that the certified "drug dog [whose alert to the Defendant-Airplane was described in the warrant affidavits] was not reliable and in any event the warrant affidavit did not provide probable cause for the search of Claimant'[s] hotel room." (*Mot. to Supp.* at 2.) The Claimant also argues that the good-faith exception to the exclusionary rule does not apply. (*Id.* at 6-10.) He is wrong on all counts.

---

[1] Rule G speaks of "a party with standing to contest the lawfulness of the seizure." The advisory committee notes further explain that: "Standing to suppress use of seized property as evidence is governed by principles distinct from the principles that govern claim standing. A claimant with standing to contest forfeiture may not have standing to seek suppression." *Id.*, advisory committee's note (Subdivision 8, paragraph (a)).

## *THE SEARCH WARRANTS & SUPPORTING AFFIDAVITS*

The Claimant challenges the probable cause supporting search warrants. In this context, a reviewing court must first determine the facts leading up to the search and then determine "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer," create probable cause to believe that contraband or evidence of a crime will be found in the place to be searched. *Ornelas v. United States*, 517 U.S. 690, 696 (1996). "The test is whether the facts presented in the affidavit would warrant a man of reasonable caution to believe that evidence of a crime will be found at the place to be searched." *United States v. Nolan*, 199 F.3d 1180, 1183 (10th Cir. 1999) (internal quotations omitted). The magistrate judge's decision to issue a warrant is entitled to great deference. *Illinois v. Gates*, 462 U.S. 213, 236 (1983). Therefore, the reviewing court "need only ask whether, under the totality of the circumstances presented in the affidavit, the magistrate judge had a 'substantial basis' for determining that probable cause existed." *United States v. Artez*, 389 F.3d 1106, 1111 (10th Cir. 2004).

The Airplane Warrant and the Hotel Warrant were issued by a Wyoming circuit court judge based upon affidavits from Cody police detective Ron Parduba. (*Mot. to Supp.*, Exh. 2 at 1-7, 10-16 (affidavits).) "A magistrate judge's task in determining whether probable cause exists to support a search warrant 'is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Artez*, 389 F.3d at 1111 (quoting *Gates*, 462 U.S. at 238).

Here, the affidavits (which were identical in substance) reported as follows. On February 27, 2014, Joel Simmons, the director of operations for Choice Aviation at the Yellowstone

Regional Airport, called Cody police to report a suspicious airplane (later identified as the Defendant-Airplane) which had arrived at the airport that day. Det. Parduba contacted Simmons who explained why he believed that the airplane and its occupants were suspicious: **(1)** the Defendant-Airplane had landed at the airport in November 2013 and the pilot flew out at night into bad weather after being told that he could not stay overnight with his plane (*id.*, Exh. 2 at 11); **(2)** the Defendant-Airplane was not currently registered (*id.*); **(3)** in November 2013, the pilot did not identify himself by tail-number over recorded radio frequencies, immediately upon landing covered the plane's windows with sunshades, and paid for airport services with $100 bills (*id.*); **(4)** on February 27, 2014, the occupants of the Defendant-Airplane (later identified as the Claimant and Mr. Wiles) did not call in before landing, again immediately covered the plane's windows with sunshades, and left the sunshades in the windows even after the plane was moved into a hangar for the night (*id.*, Exh. 2 at 11-12); **(5)** after getting a hotel room, the Claimant and Wiles took several bags out of the plane which Simmons thought was unusual for two people who were only staying for one night (*id.*, Exh. 2 at 12); **(6)** the Defendant-Airplane could be used to move heavy payloads (*id.*); and **(7)** the Claimant and Wiles were flying under "visual flight rules" which meant they did not need to file a flight plan and therefore their travels could not be tracked (*id.*). Before calling police, Simmons had called the Aircraft Owners and Pilots Association tip-line and was told to contact local authorities. (*Id.*, Exh. 2 at 12-13.)

Det. Parduba requested a drug-detection canine officer from the Powell Police Department. (*Id.*, Exh. 2 at 13.) He then met Simmons at the airport and entered the Choice Aviation hangar. (*Id.*) There, Parduba saw that there were sunshades in the Defendant-Airplane's windows and an aftermarket hatch had been installed on the underside of the plane. (*Id.*)

Powell police officer Reece McLain arrived at the hanger with his dog "Zeke." Five weeks prior, on January 21, 2014, Officer McLain and Zeke had been certified by the National Police Canine Association to detect the odor of marijuana, cocaine, methamphetamine, heroin, and MDMA. (*Id.*, Exh. 2 at 14.) Officer McLain deployed Zeke around the Defendant-Airplane: Zeke sniffed the plane's door seals and sat down outside both the left-side and right-side doors. (*Id.*) McLain then told Parduba that Zeke had alerted to the odor of narcotics. (*Id.*)

Det. Parduba interviewed Shelly Foos who worked at Choice Aviation's front desk. Foos saw the Claimant and Wiles with three bags, including a duffle bag that appeared to be heavy. (*Id.*) Det. Parduba then spoke to the Holiday Inn manager Nate Nelson who explained that the Claimant and Wiles had rented room 110 under the name "Ken Howard." (*Id.*)

Cody police detective sergeant John Beck also interviewed Nelson and learned that the Claimant and Wiles paid cash for their room, took their bags directly to room 110 after checking in, put a "do not disturb" sign on the door, and had not left the room. (*Id.*, Exh. 2 at 15.) The men had requested an HDMI cable but when it was delivered they opened the door only enough to slide the cable through and leave a tip. (*Id.*) Nelson said that he dealt with pilots and he considered the Claimant and Wiles to be suspicious due to their dress, demeanor and age. (*Id.*)

Det. Beck also interviewed the shuttle driver Stan Stewart who had driven the Claimant and Wiles from the airport to the hotel. (*Id.*) Stewart said that the Claimant and Wiles had three bags and when Stewart tried to load a duffle bag into the shuttle bus they told him to leave it and would not let Stewart touch it even though they let him load their other bags. (*Id.*)

A Park County dispatcher checked the Defendant-Airplane on the Federal Aviation Administration website and found that the certificate for the plane had been suspended. (*Id.*, Exh. 2 at 14-15.) Detectives also learned that the phone number given by the Claimant and Wiles was

from Boise, Idaho, and appeared to be assigned to a "Trac" phone. Agents with the Division of Criminal Investigation and Immigration and Customs Enforcement could not find any record of a pilot's license in the name "Ken Howard" in the Boise area. (*Id.*, Exh. 2 at 15-16.)

In addition to the specifics of the investigation, Det. Parduba explained that drug traffickers use airplanes to transport drugs and cash, take measures to conceal their identities, and use "Trac" phones to prevent tracing of the number back to an individual. (*Id.*)

### ARGUMENT

**1. The affidavit provided the magistrate judge a substantial basis to believe that evidence of drug trafficking was located in the plane and the hotel room.**

Here, the affidavit showed that the Claimant and Wiles: **(1)** were operating an unregistered airplane with a suspended certificate that was capable of carrying heavy loads; **(2)** were trying to conceal their identities and travels; **(3)** were using a name "Ken Howard" which could not be linked to a pilot's license; **(4)** were trying to conceal the interior of their plane; **(5)** took an unusual amount of luggage from their plane to their hotel room, including a heavy duffle bag which they would not let the shuttle driver touch; **(6)** did not want to open their hotel room door more than necessary; and **(7)** the plane had previously been flown out of the airport at night in bad weather when the pilot was told he could not stay with the plane overnight. When combined with the detective's description of the behavior of drug traffickers and the suspicions of laypeople who had significant contact with pilots (*i.e.*, Simmons, Nelson, the Aircraft Owners and Pilots Association), these undisputed facts provided the magistrate with a substantial basis for determining that there was probable cause to believe that the plane and the hotel room contained evidence of drug trafficking. Thus, even if there were no dog alert, the search warrants were valid and the Claimant's motion should be denied.

Of course, Zeke's positive alert to the Defendant-Airplane significantly strengthened the probable cause for both the plane and the hotel. As to the plane, the positive alert by a certified drug-detection dog alone provided probable cause to search this vehicle for drugs and evidence of drug trafficking. *E.g., United States v. Ludwig*, 641 F.3d 1243, 1250-51 (10th Cir. 2011) (dog alert created probable cause to support warrantless search of car); *United States v. Gooch*, 603 F.2d 122, 124-25 (10th Cir. 1979) (exception to warrant requirement applies to airplanes).

As to the hotel room, the Claimant asserts that there were no specific facts linking the positive alert on the plane to his hotel room. (*Mot. to Supp.* at 14.) This is clearly false as the affidavit showed that the Claimant and Wiles took their luggage—including a heavy bag which they would not let the shuttle driver touch—from the plane to their hotel room. The common-sense inference is that the Claimant and Wiles took a duffle bag containing drugs or money tainted with the residual odor of drugs from their plane to their hotel room. Thus, the alert on the plane increased the likelihood that the hotel room contained evidence of drug trafficking.

**2. The affidavit truthfully reported that the drug dog was certified—nothing more was required.**

The Claimant speculates that Zeke—though certified—was unreliable and therefore probable cause fails. (*Mot. to Supp.* at 10-11.) Here, the affidavit truthfully reported that Officer McLain and Zeke were certified to detect the odors of certain illegal drugs. This was enough for the magistrate to rely upon the alert. *United States v. Ruiz*, 664 F.3d 833, 840 (10th Cir. 2012) (search warrant based on drug dog alert is sufficient on its face if the affidavit states that dog is trained and certified to detect odor of drugs); *United States v. Kennedy*, 131 F.3d 1371, 1276-77 (10th Cir. 1997) (same); *accord Florida v. Harris*, 133 S.Ct. 1050, 1057 (2013) ("If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can

presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search."); *Ludwig*, 641 F.3d at 1251 (where warrantless search is based on dog alert "courts typically rely on the dog's certification as proof of its reliability").

### 3. Claimant is not entitled to an evidentiary hearing.

The Claimant offers no specific reason to doubt Zeke's reliability: no reason to believe that the dog's certification was a sham or the dog's training was slipshod or the detective's description untrue. Rather, the Claimant demands an evidentiary hearing to explore training and performance records on the presumption that such disputed facts will arise. (*Mot. to Supp.* at 11, 15.) This is not enough: "To warrant an evidentiary hearing, the motion to suppress must raise factual allegations that are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue." *United States v. Chavez-Marquez*, 66 F.3d 259, 261 (10th Cir. 1995) (quotation omitted).[2] Here, the affidavits indisputably report Zeke's certification, which is all that is required to support a search warrant (*supra* § 2). Therefore, there are no disputed facts that need to be resolved to decide the Claimant's motion.[3]

The Claimant implies that *Florida v. Harris*, 133 S. Ct. 1050 (2013), gives him the right to an open-ended evidentiary hearing on the dog's reliability. (*Mot. to Supp.* at 11.) When it

---

[2] *Accord Franks v. Delaware*, 438 U.S. 154, 155-56 (1978) ("where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request").

[3] The one concrete fact the Claimant offers to support Zeke's alleged unreliability is undisputed: no drugs were found in the Defendant-Airplane. Besides being undisputed, this is irrelevant because a trained drug-detection dog should alert to the residual odor of drugs where a vehicle has been used to transport drugs. *See Harris*, 133 S.Ct. at 1057 n.2; *id.* at 1059.

comes to the hearing requirement, *Harris* is different from our case because *Harris* involved <u>warrantless</u> searches based upon dog alerts, which almost always require evidentiary hearings in response to a suppression motion. The *Harris* court said only that there were no special procedures or evidentiary standards required when probable cause is based on a dog alert. *See Harris*, 133 S.Ct. at 1058 ("In short, a probable cause hearing focusing on a dog's alert should proceed much like any other."). In sum, *Harris* did not announce any special rules for dogs—it rejected them. *See id.* ("The question—similar to every inquiry into probable cause—is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime. A sniff is up to snuff when it meets that test.").

This Court scheduled a suppression hearing prior to receiving the Claimant's motion (Doc. 41) and of course may hear evidence at that time. *See United States v. Herrera*, 782 F.3d 571 (10th Cir. 2015) (court may grant evidentiary hearing even when defendant is not entitled to it). Given the Claimant's motion, however, the government respectfully requests that the Court hold a status conference at least two weeks prior to the December 17th hearing to discuss its scope. This will allow the government to prepare any necessary witnesses.

4. **Even if the warrants somehow fail, the officers relied upon the warrants in good-faith and therefore the resulting evidence should not be suppressed.**

If this Court finds that the warrants were somehow invalid, the resulting evidence should not be suppressed because the officers relied upon the warrants in good-faith. The Claimant does not say otherwise. Rather, he argues at length that Rule G(8)(a) requires the suppression of illegally seized evidence in all civil forfeiture cases without exception. (*Mot. to Supp.* at 6-10.) This argument misreads the applicable rule and has not been accepted by any court.

In full, Rule G(8)(a) provides that "[i]f the defendant property was seized, a party with standing to contest the lawfulness of the seizure <u>may move to suppress use of the property</u> as evidence. Suppression does not affect forfeiture of the property based on independently derived evidence." Rule G(8)(a) (2006) (emphasis added). Claimant misreads this rule to supersede the good-faith exception. (*Mot. to Supp.* at 7.) By its plain language, however, the rule merely allows a forfeiture claimant to file a motion to suppress and thereby prevent use of the seized property as evidence in the forfeiture action.[4] In this, Rule G(8)(a) is no different from Rule 41(h) of the Federal Rules of Criminal Procedure which provides that "[a] defendant may move to suppress evidence in the court where the trial will occur" but does not alter any Fourth Amendment standards used to decide the motion. Nor can the Claimant cite any court which has accepted his tortured reading of Rule G(8)(a). Thus, his argument fails and, if necessary, the good-faith exception should allow use of all seized evidence in this case.

WHEREFORE, for the reasons stated above, the Claimant's motion should be denied and no evidence should be suppressed. Procedurally, the government requests a status conference prior to the December 17th suppression hearing to determine the scope of that hearing.

---

[4] This interpretation of the plain-language is further supported by the advisory committee notes which state that "Rule G does not of itself create a basis of suppression standing that does not otherwise exist." Rule G, advisory committee's note (Subdivision 8, paragraph (a)). Consider: if a rule that discusses who may move to suppress evidence does not expand Fourth Amendment standing (*i.e.*, who may pursue suppression), why would that rule supersede the good-faith exception or any other Fourth Amendment principles without expressly saying so? The simple answer is: it doesn't.

Dated this 16th day of November, 2015.

          Respectfully submitted,
          CHRISTOPHER A. CROFTS
          United States Attorney

By: */s/ Eric J. Heimann*
    ERIC J. HEIMANN
    Assistant United States Attorney

## CERTIFICATE OF SERVICE

It is hereby certified on the 16th day of November, 2015, a true and correct copy of the foregoing **GOVERNMENT'S OPPOSITION TO CLAIMANT'S MOTION TO SUPPRESS** was served upon the following by the method(s) indicated below.

| | |
|---|---|
| David M. Michael | [X] Electronic Filing |
| Law Offices of David M. Michael | [ ] U.S. Mail -- postage prepaid |
| One Sansome Street, Suite 3500 | [ ] U.S. Mail -- certified |
| San Francisco, CA 94104 | [ ] Hand delivery |
| | |
| Joe D. Bustos | [X] Electronic Filing |
| 400 E 20th Street | [ ] U.S. Mail -- postage prepaid |
| Cheyenne, WY 82001 | [ ] U.S. Mail -- certified |
| | [ ] Hand delivery |

          */s/ Eric Heimann*
          United Stated Attorney's Office