**DAVID M. MICHAEL, CSBN 74031**
**EDWARD M. BURCH, CSBN 255470**
**Law Offices of David M. Michael**
**One Sansome Street, Suite 3500**
**San Francisco, CA 94104**
**Telephone: (415) 946-8996**

**JOE D. BUSTOS**
**400 E 20th Street**
**Cheyenne, WY 82001**
**Telephone: (307) 638-4633**

**Attorneys for Defendant**
**SCOTT MICHAEL LEWIS**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>One Cessna Airplane, Model Number TU-206, bearing Tail Number N6214V and Serial Number U206-1189, and<br><br>$259,717 United States Currency,<br><br>Defendants,<br><br>SCOTT MICHAEL LEWIS,<br><br>Claimant. | **Civil Case No.: 2:14-cv-00151-ABJ** |

**CLAIMANT'S RESPONSE TO UNITED STATES' MOTION TO COMPEL COMPLETE RESPONSES TO SPECIAL INTERROGATORIES**

Claimant Scott Michael Lewis ("Lewis") hereby responds to and opposes United States' Motion To Compel Complete Responses To Special Interrogatories filed by Plaintiff, United States ("the government") on or about 11/13/15.

//

## INTRODUCTION

The government moves to compel further answers from Lewis to its Rule G(6)[1] interrogatories, which are "limited" interrogatories allowing the government to only "gather information that bears on the claimant's [Article III] standing." [2]

This Court has already explicitly ruled that Lewis has Article III standing here, at least at the pleading stage,[3] and Lewis' responses to the Rule G(6) interrogatories further and undoubtedly establish that he has Article III standing at the much later summary judgment stage; therefore he has sufficiently answered the Rule G(6) interrogatories and they have served their purpose, so no further responses are required. *See U.S. v. Funds in the Amount of $239,400*, 795 F.3d 639, 645 n3 (7th Cir. 2015); *U.S. v. $154,853.00 in U.S. Currency*, 744 F.3d 559, 563-564 (8th Cir. 2014) (*citing U.S. v. $133,420.00*, 672 F.3d 629, 635 (9th Cir. 2012).

The government's perfunctory afterthought treatment of these cases is telling. The government instead relies on only one published but inapposite appellate decision and a couple of interim unpublished district court orders, boldly proclaiming that, "claimant's position is contrary to logic". Doc. 44 at 6. Yet, such bold rhetoric is just inflated posturing since, as noted, the only two published appellate decisions on point indeed adopted Lewis' position:

> The government [ ] argues that granting its motion to strike was proper because claimants failed to comply with Rule G(6), requiring them to respond to special interrogatories. The Advisory Committee Note to Rule G(6) explains that it permits "the government to file limited interrogatories at any time after a claim is filed to gather information that bears on the claimant's standing." While claimants objected to the scope of the interrogatories, Valdes did assert, under oath and unequivocally, that he owns the defendant property and that it was in his possession when it was seized. These facts are sufficient for a claimant to

---

[1] Supplemental Rules For Admiralty or Maritime Claims and Asset Forfeiture Actions.

[2] *See* Advisory Committee note to Rule G(6), which states in relevant part:

> Subdivision (6) illustrates the adaptation of an admiralty procedure to the different needs of civil forfeiture. Rule C(6) permits interrogatories to be served with the complaint in an in rem action without limiting the subjects of inquiry. Civil forfeiture practice does not require such an extensive departure from ordinary civil practice. It remains useful, however, to permit the government to file limited interrogatories at any time after a claim is filed to gather information that bears on the claimant's standing. (emphasis added).

[3] *See* Order Denying Plaintiff's Motion to Strike Claim, Doc. 26, filed 12/04/14, at p. 7 (" [T]he Court finds Claimant satisfied his burden of establishing constitutional standing .. The Court's conclusion that Claimant has constitutional standing.. at this point in the proceedings ..")

> establish standing at summary judgment. Further special interrogatories and responses were not necessary to determine standing, so the district court would have abused its discretion if it had granted the motion to strike on this alternate ground. [ ]

*$239,400*, 795 F.3d 639, 645 n3 (7th Cir. 2015), (emphasis added) *(citing $154,853,* 744 F.3d 559, 564). Likewise, *$154,853* held that:

> If [Claimant] had already established standing as to the $4,500, as the government concedes, then special interrogatories were unnecessary to determine his standing as to that currency. Thus, the [ ] court abused its discretion in striking [his claim] as to the $4,500 for failure to adequately respond to the special interrogatories when no special interrogatories were necessary to determine standing.

*$154,853.00*, 744 F.3d 559, 563-564 (8th Cir. 2014) (*citing U.S. v. $133,420.00*, 672 F.3d 629, 635 (9th Cir. 2012)).

It is troubling that in the face of this adverse authority directly on point, the government continues its campaign of improperly "blending standing and the merits" which if permitted would "effectively nullif[y] recent measures protecting claimants in civil forfeiture cases." *$239,400*, 795 F.3d 639, 640. Yet, this Court should not be led down the path of error and conflate the constitutional standing inquiry with the merits determination that comes later.

**1. Lewis Has Established Standing Even At The Later Summary Judgment Stage, And There Is No Serious Argument Otherwise**

Article III constitutional standing, part of United States law since the enactment of the United States Constitution in 1789, is merely the threshold, simple requirement that the Courts decide actual rather than hypothetical controversies, and in the context of a civil forfeiture actions, is not a demanding burden for claimants, especially when the plaintiff (government) has seized property from the claimant.

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized, [ ]; and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'" [ ]. Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." [ ]. Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." [ ]

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) (internal citations omitted).

"The Article III limitations are familiar: The plaintiff must show that the conduct of which he complains has caused him to suffer an 'injury in fact' that a favorable judgment will redress." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004) (citing *Lujan*, 504 U.S. 555, 560-561); *see also $239,400*, 795 F.3d 639, 643 (7th Cir. 2015).

Article III standing does not take on some new, special, heightened meaning or importance in civil drug asset forfeiture actions, as Judge Posner recently reiterated in a civil forfeiture case: "Article III standing [requires] an injury ... such as the injury inflicted by the government when it has got hold of money that belongs to the person and refuses to return it[.]" *U.S. v. $574,840 (Unsworth, Pillsbury – Claimants)*, 719 F.3d 648, 651 (7th Cir. 2013).

Essentially all appellate level courts have described the Article III standing requirement in civil forfeiture actions as "undemanding", and because even a mere possessory interest can be sufficient for standing,[4] standing is satisfied at the pleading stage by a claimant simply saying he owns the defendant property. *See, e.g., U.S. v. Real Property Located at 475 Martin Lane*, 545 F.3d 1134, 1140 (9th Cir. 2008) (the "burden [of demonstrating Article III standing for claimant] is not a heavy one, at least at the initial stages of a forfeiture suit" and "alleg[ing] an ownership interest", ipse dixit, "in their pleadings" was sufficient "at the motion to dismiss stage") (emphasis added). [5]

Every federal circuit court of appeals to address the question has held that in a civil forfeiture action, when (1) the government admits in its forfeiture complaint that it seized property sought to be forfeited from the claimant and (2) that claimant declares under oath to own the property, a claimant has standing even at the later summary judgment stage.

---

[4] *E.g., U.S. v. $122,043.00*, 792 F.2d 1470, 1473 n. 5 (9th Cir. 1993) (collecting cases); *U.S. v. $94,000.00*, 2 F.3d 778, 790 n. 11 (7th Cir. 1992).

[5] *See also, e.g. U.S. v. One Lincoln Navigator*, 328 F.3d 1011, 1013 (8th Cir. 2003) ("[i]n a forfeiture case, a claimant's Article III standing turns on whether the claimant has a sufficient ownership interest in the property to create a case or controversy. This threshold burden is not rigorous."); *U.S. v. 5 S. 351 Tuthill Road*, 233 F.3d 1017, 1022 (7th Cir. 200) (*citing Family & Children's Ctr., Inc. v. School City of Mishawaka*, 13 F.3d 1052, 1058 (7th Cir. 1994)).

A claimant's "assertion of ownership, combined with [a claimant]'s possession of the currency at the time it was seized, would be enough to establish [claimant]'s standing for purposes of a motion for summary judgment." *$133,420.00 supra*, 672 F.3d at 638, 640 (9th Cir. 2012) (citation omitted). Indeed,

> In cases in which a person has asserted an ownership interest, our sister courts have not required the claimant to present the type of explanatory evidence urged by the government to establish his or her standing.
> ... our society is one that values both personal property rights and the appropriate judicial resolution of disputes involving those rights. As we view it, the government cannot prevent every person unwilling to completely explain his relationship to property that he claims to *own*, and that is found in his possession and control, from merely *contesting* a forfeiture of that property in court. It may well be that forfeiture ultimately will prove appropriate, but we find it obvious that such a claimant risks injury within the meaning of Article III and thus may have his day in court. We thus hold that when a claimant has asserted an ownership interest in the res at issue and has provided some evidence tending to support the existence of that ownership interest, the claimant has standing to challenge the forfeiture. In light of the foregoing, we turn to a consideration of whether Austin's unequivocal claim of ownership over the currency seized, coupled with the undisputed evidence that the money was taken from his possession and control, are together sufficient to confer constitutional standing on this record.
> ... because Austin's assert[ed] ownership [ ] and because the currency was indisputably seized from a vehicle that Austin was driving, we hold that Austin has established constitutional standing at this [summary judgment] stage of the litigation.

*U.S. v. $148,840.00*, 521 F.3d 1268, 1274-1275, 1277 (10th Cir. 2008) (underscore added) (italics in original); *see also U.S. v. 1998 BMW "I" Convertible*, 235 F.3d 397, 399 (8th Cir. 2000); *U.S. v. $8,440,190.00*, 719 F.3d 49, 59-60 (1st Cir. 2013).

Here, Lewis in separate Rule G(6) responses declared under oath that "I own the Defendant Cessna Airplane and it was seized from my possession" (Doc. 44-2 at 7) and "I own the defendant $259.717 United States Currency and it was seized from my possession" (Id at 8). The government admits in its complaint that both the defendant airplane and defendant currency were in Lewis' possession when the government seized it. *See, e.g.,* Doc. 1 at 3 ("The Defendant-Property was seized from Scott Lewis [ ] on February 28, 2014 …"). There is no

serious conclusion but that Lewis has standing as to each property even at a later summary judgment stage.

While the government says that it "absolutely" does not concede Lewis' standing here, its one-sided and unsupported opinion is not controlling and, since there is no discernable or coherent reasoning as to how Lewis' Rule G(6) responses fail to establish his standing, nor could there be. Lewis has established standing with his Rule G(6) interrogatory responses.

In its seminal opinion on the subject, a unanimous panel of the Seventh Circuit held that the district court had erred in striking a claimant on the basis that the claimant had failed to sufficiently answer Rule G(6) interrogatories, explaining, at the onset, the core of the district court's error: "[b]y blending standing and the merits, the district court effectively nullified recent measures protecting claimants in civil forfeiture cases." *$239,400, supra*, 795 F.3d 639, 640.

As the Court went on to explain at length: "[t]he issue at the heart of this appeal is the boundary between standing, Article III or otherwise, and the merits in a civil forfeiture proceeding." *Id*. at 641. Since the government there could not, like here, seriously argue that the claimant, from whom the government took the defendant property, lacked Article III standing, the government instead argued that the claimant, <u>in Rule G(6) interrogatory responses</u>, was required to prove a "legitimate" non-forfeitable, or innocent interest in the defendant property so as to establish what the government called "statutory standing." *Id.* at 643.

The *$239,400* court in a lengthy discussion explained that "[t]here is no basis in our precedents for the view that Rule G requires a claimant to demonstrate 'legitimate' ownership of the defendant property to show standing" (795 F.3d at 644), noting that, per recent U.S. Supreme Court authority, standing has been "recently clarified and narrowed" and the high court "cautioned that labels like 'prudential standing' and 'statutory standing' are misleading and should be avoided", and instead "federal courts have a 'virtually unflagging' obligation to decide cases within their Article III jurisdiction," and where the federal government took property from a person who wants it back is certainly something within that purview. 795 F.3d at 645. Further:

> [T]he most compelling reason to reject such a requirement as part of the Rule G standing inquiry is that it would undermine the statutes governing civil forfeiture.

> The Civil Asset Forfeiture Reform Act of 2000 (CAFRA) placed the burden on the government to prove by a preponderance of evidence that property is forfeitable. 18 U.S.C. § 983(c). CAFRA thus shifted the burden of proof in civil forfeiture actions by "forcing the Government to prove that property is subject to forfeiture as opposed to forcing the property owner to prove his property is not subject to forfeiture." [ ]
> Rule G places the burden on the claimant to prove by a preponderance of evidence that he has standing. Rule G(8)(c)(ii)(A) adds that a motion to strike a claim because the claimant lacks standing "must be decided before any motion by the claimant to dismiss the action." And Rule G(8)(c)(ii)(B) provides that a motion to strike "may be presented ... as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing."
> If we were to read Rule G to require a claimant to demonstrate "legitimate" ownership, we would thus nullify a central reform of CAFRA. Putting the pieces together from the previous two paragraphs makes this easy to see. The government insists that demonstrating legitimate ownership is an indispensable part of a claimant "establishing standing by a preponderance of the evidence." Rule G(8)(c)(ii)(B). Demonstrating legitimate ownership, though, is tantamount to demonstrating that "property is not subject to forfeiture." [ ]. Any time the government moves for summary judgment on standing in a civil forfeiture action, then, the claimant would have to "carry the burden" of establishing by a preponderance of the evidence that his property is not subject to forfeiture. That would effectively shift the burden of proof from the government back to the claimant, contrary to 18 U.S.C. § 983(c).

*$239,400*, 795 F.3d 639, 645-646 (citations omitted). The Court went on to explain how "erroneous melding of standing and the merits in civil forfeiture actions" would undermine other reforms, like depriving a claimant of a jury trial (id. at 646), finally emphasizing that standing is a "truly threshold" concept, reminding that per precedent, "in a civil forfeiture action the *government* is the plaintiff, and it is the government's right to forfeiture that is the sole cause of action adjudicated [so] [i]f the government fails to meet its burden of proof ... the claimant need not produce any evidence at all[;] [s]tanding must be clearly separated from the merits in civil forfeiture cases so that the government is not relieved of its burden to "prove that property is subject to forfeiture." *Id.* at 647 (emphasis in original).

Thus, a claimant who swears to own a defendant property taken from him cannot be made to prove his innocent ownership in Rule G(6) interrogatory responses. *Id.* 645 n3.

**2. If A Claimant Establishes Standing, No Further Rule G(6) Responses Are Necessary**

As noted, a claimant who has established standing does not need to provide further responses to Rule G(6) explaining and proving that his property is not subject to forfeiture. *$239,400, supra,* 795 F.3d 639, 645 n3; *see also* ***$154,853,*** ***supra***, 744 F.3d 559, 563-564.

Indeed, Rule G(6) only requires additional evidence of standing when the claimant, in his claim, asserts merely an unexplained **possessory** interest in the property, which is insufficient for standing. The contrary conclusion conflates the legal standard for owners with the legal standards for possessors, something which the Ninth Circuit has specifically held should not be done. *See U.S. v. $999,830.00 (Simard - Claimant)*, 704 F. 3d 1042, 1043 (9th Cir. 2012).

Remember, special interrogatories are by their own express terms "limited" in scope (*see* Rule G(6)(a): "[t]he government may serve special interrogatories limited to the claimant's identity and relationship to the defendant property ..." and permitted only to allow the government to gather information that bears on Article III standing, when appropriate (i.e. when it is genuinely in question). *See* Advisory Committee Note to Rule G(6) (Rule C(6) interrogatories not limited, but Rule G(6) interrogatories are "limited" and "permit the government to file limited interrogatories at any time after a claim is filed to gather information that bears on the claimant's standing.") (emphasis added). Indeed, Rule G(6)(b) specifically allows a Claimant to serve only objections when appropriate ("Answers or objections to these interrogatories must be served ….") (emphasis added).

**3. The Pure and Classic Dicta of An Inapposite Out of Circuit Case *($133,420*) Does Not Require A Different Result Than That To Which The Seventh Circuit *($239,400*) and Eight Circuit (*$154,853 )* Came To in Their Reasoned Analysis**

Ironically, the government, in its tacit admission that *$239,400, supra*, and ***$154,853,*** *supra,* constitute authority squarely adverse to its position, characterizes them as "fleeting reference" and "dictum." Yet, as is obvious from the quotes and discussion above, those opinions were neither.

It is difficult to fathom how the government can seriously suggest that *$239,400's* Rule G(6) holding was nonbinding or state that is was "dicta." Dictum is simply a passing comment

that was not necessary to the disposition of a case, and for that reason is not binding.[6]

> The statement in *Yancey* was a dictum, a term variously defined. We have defined dictum as "a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding -- that, being peripheral, may not have received the full and careful consideration of the court that uttered it." *[ ]* "Dictum is a general argument or observation unnecessary to the decision. . . . The basic formula [for distinguishing holding from dictum] is to take account of facts treated by the judge as material and determine whether the contested opinion is based upon them." *[ ]* A dictum is "any statement made by a court for use in argument, illustration, analogy or suggestion. It is a remark, an aside, concerning some rule of law or legal proposition that is not necessarily essential to the decision and lacks the authority of adjudication."

*U.S. v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988) (emphasis added) (internal citations omitted).

*$239,400's* holding regarding Rule G(6) interrogatories, as discussed, was not a passing comment, a general argument or observation unnecessary to the decision, rather it was an explicit holding based on lengthy, sound reasoning. This is obvious from the onset, where *$239,400* began by acknowledging the specific argument made by the government for affirming the district court. 795 F.3d 639, 645 n3 ("[t]he government also argues that granting its motion to strike was proper because claimants failed to comply with Rule G(6), requiring them to respond to special interrogatories. …") The Court then went on to explicitly reject the argument as a ground for affirmation. *Id.* ("Further special interrogatories and responses were not necessary to determine standing, so the district court would have abused its discretion if it had granted the motion to strike on this alternate ground").

Obviously this holding was necessary to the decision because, had the Seventh Circuit agreed with the government's "alternative ground" for affirmation, then the District Court would have been affirmed. Instead, the alternative ground was squarely presented as an issue,[7] briefed, and ruled upon by the Seventh Circuit Court – it was rejected and thus the District Court was

---

[6] ***E.g.***, *U.S. v. Johnson*, 256 F.3d 895, 920 (9th Cir. 2001); *Metro. Hosp. v. U.S. HHS*, 712 F.3d 248, 274 (6th Cir. 2013); *Creek v. Village of Westhaven*, 144 F.3d 441, 445-446 (7th Cir. Ill. 1998); *Alexander v. FBI*, 456 Fed. Appx. 1, 2 (D.C. Cir. 2011).

[7] ***Contrast with*** *Crawley*, 837 F.2d 291, 293 (the "issue [ ] was not presented as an issue, hence was not refined by the fires of adversary presentation … so the court had no occasion to consider [it, and thus] it is apparent both that the court was not attempting to change the established standard and that no reasonable interpreter of our decisions would have thought it was" so it was dictum.

***reversed***. The case was ***remanded***. To suggest that this was dictum is ridiculous.

But what **is** dicta is the Rule G(6) discussion in *$133,420,* on which the government heavily relies and calls "much more detailed, deliberative, persuasive."

First and foremost, *$133,420* is wholly inapposite, as it did not affirm the compelling of further Rule G(6) responses from the claimant (who had, in his claim, only claimed a possessory interest). Rather, when that claimant tried to change course and say he owned the property in Rule G(6) responses in the midst of regular discovery, and then made a Fifth Amendment objection to shield himself from further inquiry, his Rule G(6) responses were stricken and what remained (his unexplained possessory claim) did not confer standing. Here, as clearly distinguished, Lewis claimed ownership in his claim and has not made any Fifth Amendment objection.

Second, anything that *$133,420* says about Rule G(6) is pure and classic dicta. *$133,420* was dealing with a claimant who had asserted only an **unexplained possessory interest** in his claim, which makes the "legal standard[s]" that applied there starkly different than what applies here (*cf. $999,830, supra,* 704 F. 3d 1042, 1043) [8], and moreover, the *$133,420.00* claimant had been served identical Rule 33 interrogatories which were not limited in scope:

> [T]he argument that these interrogatories exceeded the scope of Rule G(6) gives Louis little assistance here because the government served an identical set of discovery requests on Louis pursuant to the Federal Rules of Civil Procedure before the district court struck Louis's responses, and Louis would not have been entitled to refrain from answering such discovery requests because of their scope. *See* Fed.R.Civ.P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . .").

*$133,420,* 672 F. 3d 629, 643 fn5 (emphasis added). Thus, it was not necessary or essential for *$133,420.00* to even reach the questions of Rule G(6)'s scope, because Fed.R.Civ.P. 26 obligated the claimant there to respond without limit to the government's discovery requests.

Finally, the "reasoning" regarding Rule G(6) in the *$133,420* panel is pure fallacy. Rule G(6) is not rendered superfluous if a claimant (who has declared in his claim to own the property) does not fully explain his ownership. Remember, Rule G(6)(b) plainly and specifically

[8] *See* Advisory Committee note to Rule G(6)("If the claimant asserts a relationship to the property as bailee [i.e., only possessor], the interrogatories can inquire into the bailor's interest in the property and the bailee's relationship to the bailor.")

allows a claimant to serve only objections. Moreover, as the advisory committee note explains, the purpose of Rule G(6) interrogatories is to allow the government to gather information that bears on a claimant's standing, and when a claimant has claimed to own a defendant property in his claim, *unlike when he merely claims some unexplained possessory interest*, explanations about how, when and why he came to own it does not bear on standing, they bear on the merits of the action. Whether claimant came to own it from drug trafficking, from selling widgets, from selling himself, or from working at McDonald's, he still has standing if he claims to own property seized from him. Where a claimant claims a mere possessory interest, then and only then must he explain that possession to establish standing.

Furthermore, Rule G(6) is not rendered superfluous because (1) the government still gets to receive Rule G(6) responses regarding "claimant's identity", which is a critical aspect in establishing Article III standing, and Lewis has provided such information, and (2) the government still gets to receive Rule G(6) responses as to the Claimant's "relationship to the property" for Article III standing, such as "taken from my possession" or "the government says I own it in its complaint" or "title is in my name" or "I exercise dominion and control over the place where the property was seized" or "heir to the estate", all examples recognized by various circuit courts, and none of which are required in the initial claim.[9]

**CONCLUSION**

Claimant has standing here and no further responses to Rule G(6) interrogatories are required for that or any other purpose. The government's motion to compel must be denied.

Respectfully submitted,

Dated: 27 November 2015

*s/David M. Michael*
DAVID M. MICHAEL
LAW OFFICES OF DAVID M. MICHAEL
Attorney for Claimant SCOTT LEWIS

[9] *E.g., U.S. v. $196,969*, 719 F.3d 644, 645-6 (7th Cir. 2013) ("All that [Rule G](a)(1) requires is that the claim be signed under penalty of perjury, served on the government, and "identify the specific property claimed [so] the "bald assertion" would strictly comply with the rule").

**CERTIFICATE OF ELECTRONIC SERVICE**

I hereby certify that, on 27 November 2015, I caused to be electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/*David M. Michael*___________________
DAVID M. MICHAEL