REVIEW OF U.S. VS. ONE CESSNA AIRPLANE & $259,717 U.S. CURRENCY

JANUARY 19, 2015

SUBMITTED TO:   C. LEVI MARTIN
                 U.S. DEPARTMENT OF JUSTICE
                 DISTRICT OF WYOMING
                 CHEYENNE, WYOMING 82003-0668

PERTAININIG TO: CASE NO. USDC-WY-14-CV-151-J

PREPARED BY:    ANTONIO V. "TONY" MARTINEZ
                 AVIATION ENFORCEMENT AGENT
                 U.S. DEPARMENT OF HOMELAND SECURITY
                 CUSTOMS & BORDER PROTECTION/AIR & MARINE OPERATIONS
                 AIR & MARINE OPERATIONS CENTER
                 1355 CUSTOMS WAY/BUILDING 605
                 MARCH A.R.B. CA 92518-6363
                 TELEPHONE 951-656-8000

## INTRODUCTION

I, Antonio V. "Tony" Martinez, am an Aviation Enforcement Agent (AEA) of the United States Department of Homeland Security (DHS) Customs and Border Protection's (CBP) Air and Marine Operations (AMO). I am currently assigned at the Air & Marine Operations Center (AMOC) Law Enforcement Division.

I have over seven (7) years in the AEA position. I am presently assigned to investigate federal crimes related to general aviation including criminal violations of Titles 8, 18, 19, 21 and 49 of the United States Code.

Prior to my employment with the AMOC, I served in various capacities as a U.S. Border Patrol Agent for approximately twenty two (22) years. That includes tenures as a Supervisory Border Patrol Agent for two years (1994 to 1996), and as a Special Agent with a Border Patrol Anti-Smuggling Unit (ASU) for two (2) years (1996 to 1998). Duties for those positions included the investigation of criminal violations relating to alien and drug smuggling under Titles 8, 18, 19 and 21 of the United States Code.

I have accumulated criminal investigative experience in multi-agency task force environments, including being the Border Patrol Liaison to the Federal Bureau of Investigation's (FBI) Joint Terrorism Task Force (JTTF) in San Diego California (CA) from May 2003 to May 2004. This was in the capacity of a task force agent conducting the full scope of anti-terrorism investigations.

In 1999 I participated in a Homeland Security Investigations (HSI), in conjunction with the Office of Foreign Assets Control (OFAC), human trafficking Title-III and currency damming investigation in San Diego CA. I was an undercover money transmitter electronically detecting, identifying and seizing currency suspected of being used to pay illegal alien smuggling fees to the alien smuggling organizations in Mexico.

From July 2006 to October 2007, I was the U.S. Border Patrol Liaison Officer at the Air & Marine Operations Center (AMOC), March Air Reserve Base (ARB), Moreno Valley CA.

My cumulative law enforcement experience of over thirty two (32) years also includes working approximately three (3) years as a Yuma County Sheriff Office (YCSO) Deputy (1983 to 1986) in Yuma, Arizona (AZ), prior to becoming a Federal Agent. For approximately one (1) year during my tenure as YCSO Deputy I participated as a narcotics enforcement officer on a joint YCSO/U.S. Customs Service (USCS) task force that included investigating AZ State narcotic violations and criminal violations related to Title 19 and 21 of the United States Code.

I have received over 500 hours of training in the interpretation and application of federal statues, federal court procedures, and techniques required to insure the admissibility of evidence at the time of trial. During these assignments, I either investigated or assisted in the investigation of criminal investigations.

As a Federal Agent, I have received extensive training and experience in criminal investigations related to aviation smuggling. I have increased my collective law enforcement knowledge from personal investigations and through the interviews of counterpart law enforcement officers, their official reports and research of law enforcement data bases, and continued law enforcement training. I have also participated in proffer hearings where criminals provide insight into how they conduct their criminal activities.

This includes detecting and investigating criminal investigations in narcotics smuggling, bulk currency smuggling, and financial investigations related to general aviation and the use of private aircraft.

Since September 2008, as an AEA at the AMOC, I have personally investigated over ninety (90) investigations related to the use of private aircraft. I have assisted other agencies; including Homeland Security Investigations (HSI), Drug Enforcement Administration (DEA), Federal Bureau of Investigations (FBI), and local agencies; on many other similar investigations.

Of these ninety investigations, over ten (10) of them were aviation smuggling cases in which bulk currency smuggling was detected and prosecuted. I have also assisted other agencies on many other similar investigations.

The AMOC is a radar coordination facility located at the March U.S. Air Force's ARB, Moreno Valley CA. This facility is electronically linked into the U.S. Federal Aviation Administration (FAA) and Department of Defense (DoD) network of radar facilities throughout the U.S. Customs & Border Protection.

The AMOC Law Enforcement Division, comprised of AEAs and Marine Interdiction Agents (MIAs), provides collective law enforcement advice, coordination and direction in investigations of aviation and maritime, or other criminal activities, smuggling cases. Information researched by AMOC Detection Enforcement Officers (DEO) and Intelligence Research Specialists (IRS) allow detection of illegal drug smuggling. This information is based on common factors in suspect aircraft or individuals.

I use this targeting method, based on training, experience, known trends, and investigative leads developed to detect illicit activity related to general and private aviation. I frequently travel throughout the U.S., and internationally, to educate partner law enforcement agencies or other entities in detecting indicators of suspect activity related to aviation and maritime smuggling.

For instance, the following factors are indicative of illegal drug smuggling using private aircraft:

1. Flying via Visual Flight Rules (VFR) in Instrument Flight Rules (IFR) conditions;

2. Reclusive behavior, including attempts to avoid public contact;

3. Suspicious itineraries, including quick turnaround trips, improbable travel plans, and unusual distances traveled;

4. Appearing to be on deadlines;

5. Flying into or against inclement weather;

6. Frequenting isolated airports or runways;

7. Carrying large amounts of currency;

8. Paying in cash, often with large denomination currency bills;

9. Traveling to and from known and established drug distribution and production areas;

10. Use of false or assumed identities;

11. Appearance of legitimacy by investing in, using, and/or creating the appearance of legal businesses;

12. Type of airplane and any modifications, including payload and ability to take-off and land on short runways and undeveloped areas;

**INVESTIGATIVE REVIEW**

At the request of C. Levi, Assistant U.S. Attorney, District of Wyoming, I reviewed:

1. Document 43-2, State of Wyoming Search Warrants and Detective Rona Parduba's Cody Police Depart report of investigation regarding this case
2. FAA Certified Blue Ribbon Aircraft File N6214V (Bates Nos. Lewis-14CV58-Martinez through 00189B)
3. Photos from the search of the aircraft (Bates Nos. Lewis-14CV58-Martinez 00189 through 00223)
4. Photos from the search of the aircraft (Bates Nos. Lewis-14CV58-Martinez 00224 through 00246)
5. HSI ROIs (Bates Nos. Lewis-14CV58-Martinez 00247 through 00272)

**ANALYSIS**

This seizure displayed facts indicative of illegal drug smuggling because:

1. Choice Aviation director of operations, Joel Simmons, of the Yellowstone Regional reported the Cessna 206, bearing tail number N6214V, was being flown by Scott Lewis in VFR mode when the plane landed during inclement weather. Mr. Simmons also recalled Scott Lewis from a previous November 2013 flight where Lewis also flew N6214V during inclement weather. Prudent pilots will fly using IFR in these conditions and not in VFR modes;

2. Mr. Simmons described the occupants of N6214V displayed suspicious reclusive behavior and attempted to avoid public contact during November 2013 and on February 27, 2014, when sun shades were placed inside the windows as if to conceal the interior of the aircraft from public view. Mr. Simmons recalled this occurred in 2013 while N6214V was taxiing" into the hangar before the plane came to a complete stop and on February 27, 2014, while taxiing before the plane come to a complete stop inside the hangar. Mr. Simmons reported no radio calls were made when N6214V arrived at Cody WY both in 2013 and 2014, while other aircraft did. Photographs of N6214V inside the hangar show the shades in place while other surrounding aircrafts don't. Choice Aviation staff and Holiday Inn personnel both reported Mr. Lewis and Gilbert Wiles were reluctant in allowing anyone assist carrying some of the baggage, a heavy duffle bag specifically, when offloaded from N6214V. Mr. Simmons also reported to Cody Police Detective Ronald Parduba the amount of luggage offloaded by Mr. Lewis and Gilbert Wiles for an overnight stay raised suspicions;

3. HSI Special Agent James Hasskamp's ROI number 006 in which global positioning systems (GPS) and navigational devices from N6214V of archived flights were examined reveal suspicious flights with no set pattern. Special Agent Hasskamp's description of the waypoints obtained from the September 1, 2011, titled BUDRNINGMA indicates "Burning Man" which is an annual social gathering that occurs in Black Rock City, Nevada (NV), that generally takes place between the ends of August through the first weeks of September. Several levels of federal and local law enforcement agencies plan yearly operations to patrol this community festival because it is common knowledge that illegal drug use is prevalent among some of the attendees. Additionally, the waypoints describing flights on December 24 through February 27, 2014, show no reasonable patterns and are of varying distances;

4. Flying in VFR mode while the conditions call for IFR can be a criminal indication that drug smugglers are on a deadline to reach a final destination. The November 2013 event recalled by the Mr. Simmons indicates the pilot of N6214V was in rush to continue flying. Mr. Simmons' description of Mr. Lewis and Mr. Wiles at the Yellowstone Regional Airport on February 27, 2014, as if they were on the road a long time is also indicative of drug smugglers on a deadline to reach a final destination;

5. In the November 2013 flight, when Mr. Simmons told Mr. Lewis he couldn't stay with N6214V and sleep inside the plane, Mr. Lewis flew N6214V out of the Yellowstone Regional Airport during inclement weather. The arrival of N6214V at Yellowstone Regional Airport on February 27, 2014, was also during inclement weather;

6. According to data from the GPS and navigational equipment some of the airports N6214V landed at are isolated airports and include Windom Municipal Airport, Windom, Minnesota (MN), Airlake Airport, Minneapolis MN, Thomas County Airport, Thedford Nebraska (NE), Barstow-Daggett Airport, Barstow CA and Ward Field Airport, Gasquet CA. These types of airports are preferred by drug smugglers because they have no control towers and use self-service fueling stations;

7. The seized $259,717 U.S. Currency is indicative of drug smugglers transporting large amounts of currency. The packaged and inventoried manner in which the seized currency was discovered is common in bulk currency smuggling cases. The structured and smaller amounts below required banking reporting thresholds allow for quickly depositing the money later without drawing attention. These structured financial transactions also include using aircraft, in which N6214V becomes contraband because it was used to transport illicit cargo. Drug smugglers are aware of anti-money laundering programs utilized by the U.S. domestic banking industry to legally report large financial transactions and use of N6214V to transport unannounced or undeclared bulk currency was an attempt to avoid investigative scrutiny;

8. Drug smugglers often use cash to make purchases and pay for expenses rather than depositing currency in the bank and risk detection by law enforcement. In this case, several incidents of services rendered paid for in cash are documented. This includes on November 2013 services for N6214V being paid in one hundred (100) dollar bills, Short Take Off and Landing (STOL) upgrades to N6214V were paid for in cash and assumed identities were used when the plane was purchased in TX. The purchase of N6214V in TX was for a suspiciously large amount of $130,000 in U.S. Currency;

9. Data from the GPS and navigational equipment list from N6214V identify the plane flying to and away from known and established drug distribution and production areas in California. This includes Barstow CA, close to illegal narcotics distribution areas of Southern California, and Gasquet CA, close to known indoor and outdoor marijuana cultivation regions Northern California;

10. Drug smugglers use assumed identities to make purchases and pay for expenses in their attempts to conceal financial transactions from law enforcement. Several facts described in Detective Parduba's report and the HSI ROIs revealed aliases and false identifications, in conjunction with cash payments, was used by Mr. Lewis. This included an aliases of Ken Howard when a hotel room reservation form was filled out at Choice Aviation. Straight Flight, Inc., aircraft mechanic Harry Grinton from the Centennial Airport in Englewood CO who performed work on N6214V in June 2013 reported Mr. Lewis used a first name alias of Steve and Mr. Wiles used an alias of Karl Stassney;

11. Drug smugglers attempt to gain the appearance of legitimacy by investing in, using, and/or creating the appearance of legitimate businesses. Mr. Lewis and Mr. Wiles used false pretenses to buy and obtain aviation services for N6214V. When N6214V was upgraded with a STOL system by Straight Flight, Inc., Mr. Lewis and Mr. Wiles claimed the plane was going to be used for aerial photography with a Digital Aerial Imaging Solutions. Special Agent Hasskamp confirmed with Joshua K. Helton, Vice President and General Manager of Digital Aerial Solutions (DAS), Tampa, Florida (FL), DAS doesn't own N6214V, nor employ Mr. Lewis or Mr. Wiles. Special Agent Hasskamp also found electronic mail (email) accounts by Mr. Wiles under the alias of Karl Stassney were established to bypass DAS business email. Agent Hasskamp also found work done by Straight Flight, Inc., on N6214V and billed to Aerial Imaging, in South Bend, Indiana (IN) used an address to Williams Aerial and Mapping, South Bend IN. Williams Aerial and Mapping also doesn't own N6214V or employ Mr. Lewis or Mr. Wiles;

12. Drug smugglers often modify aircraft to support bigger payloads or to land in undeveloped areas. The STOL modifications to N6214V by Straight Flight, Inc., doesn't support the need for aerial mapping as claimed by Mr. Lewis and Mr. Wiles. The only purpose of the STOL on N6214V would for it to land and depart from short runways or undeveloped areas.

**CONCLUSION**

Upon review of the information provided with all facts combined and based on my law enforcement experience, I am of the opinion that this private aircraft, Cessna 206 bearing tail number N6214V, and the seized $259,717 U.S. Currency were being used in drug smuggling.

_Antonio V. Martinez_
Antonio V. Martinez
Enforcement Aviation Specialist
Air & Marine Operations Center