DAVID M. MICHAEL, CSBN 74031
EDWARD M. BURCH, CSBN 255470
Law Offices of David M. Michael
One Sansome Street, Suite 3500
San Francisco, CA 94104
Telephone:    (415) 946-8996

JOE D. BUSTOS
400 E 20th Street
Cheyenne, WY 82001
Telephone:    (307) 638-4633

Attorneys for Defendant
SCOTT MICHAEL LEWIS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>) |
| Plaintiff, | )<br>) **Civil Case No.: 2:14-cv-00151-ABJ** |
| v. | )<br>) |
| One Cessna Airplane, Model Number<br>TU-206, bearing Tail Number N6214V<br>and Serial Number U206-1189, and | )<br>)<br>) |
| $259,717 United States Currency, | )<br>) |
| Defendants, | )<br>) |
| SCOTT MICHAEL LEWIS, | )<br>) |
| Claimant. | ) |

**EXHIBIT 3 AND EXHIBIT 4 TO RENEWED MOTION TO SUPPRESS**

**Exhibit 3**

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF WYOMING

 3   --------------------------------------------------------------

 4   UNITED STATES OF AMERICA,        Case No. 14-CV-00151-J

 5          Plaintiff,                Cheyenne, Wyoming
                                      December 18, 2015
 6          vs.                       2:28 p.m.

 7   ONE CESSNA AIRPLANE, MODEL
     NUMBER TU-206, BEARING TAIL
 8   NUMBER N6214V AND SERIAL NUMBER
     U206-1189, and
 9
     $259,717 UNITED STATES CURRENCY,
10
            Defendants,               CERTIFIED COPY
11
     SCOTT MICHAEL LEWIS,
12
            Claimant.
13   --------------------------------------------------------------

14

15        TRANSCRIPT OF SCHEDULING CONFERENCE PROCEEDINGS

16           BEFORE THE HONORABLE ALAN B. JOHNSON
                UNITED STATES DISTRICT JUDGE
17
     APPEARANCES:
18
     For the Plaintiff:      MR. ERIC J. HEIMANN
19                           MR. C. LEVI MARTIN
                             Assistant U.S. Attorneys
20                           UNITED STATES ATTORNEY'S OFFICE
                             P.O. Box 668
21                           Cheyenne, WY 82003-0668

22   For the Defendants      MR. JOE D. BUSTOS
     and Claimant:           Attorney at Law
23                           JOE D. BUSTOS LAW OFFICE
                             400 East 20th Street
24                           Cheyenne, WY 82001

25          OFFICIAL COURT REPORTER - (303)296-3056

     Proceedings recorded by mechanical stenography;
     transcript produced by computer.
```

14-CV-00151-J          Scheduling Conference        12/18/2015    2

1    APPEARANCES:  (Cont.)

2    For the Defendants          MR. DAVID M. MICHAEL
     and Claimant:              Attorney at Law
3                               LAW OFFICES OF DAVID MICHAEL
                                One Sansome Street, Suite 3500
4                               San Francisco, CA 94104
                                (Appearing via teleconference)
5

6    Court Reporter:            MS. JULIE H. THOMAS, RMR, CRR
                                910 19th Street, Rm. A256
7                               Denver, CO 80294
                                (303)296-3056   CA CSR No. 9162
8

9                       *    *    *    *    *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        (Proceedings commenced 2:28 p.m.,

2        December 18, 2015.)

3             MR. MICHAEL:  This is David Michael calling in.

4             THE COURT:  Good, we have a nice connection with you,

5    Mr. Michael.  This is Judge Johnson speaking.  Present also

6    with me --

7             MR. MICHAEL:  Judge Johnson, nice to --

8             THE COURT:  Thank you.  Present with me is Joe

9    Bustos, who just came in, your local counsel.  And Eric

10   Heimann and Levi Martin from the United States Attorney's

11   Office are both present also.  We are all leaning over a

12   conference table in chambers.

13            The matter for hearing today is United States of

14   America, plaintiff, against One Cessna Airplane and Scott

15   Michael Lewis, who makes claim to the airplane as well as the

16   sum of $259,717 in United States currency, all of this in

17   Docket 14-CV-00151.  This all arises out of a -- out of

18   searches pursuant to warrants issued by the Circuit Court in

19   Cody, Wyoming, of a Cessna aircraft as described and the hotel

20   room or motel room, Holiday Inn, Room 110, located at

21   1701 Sheridan Avenue in Cody, Wyoming, which occurred on or

22   about February 28th, 2014 in the morning hours.

23            We had a pretrial conference in this matter, and a

24   period of discovery was set for the parties.  And can I get a

25   report from you, Mr. Heimann, concerning the discovery that

1    you have engaged in?

2            MR. HEIMANN:  Your Honor, the Government has served

3    interrogatories under Supplemental Rule G(6).  We received

4    some inadequate answers.  We filed a motion to compel, which

5    was granted by Judge Rankin.  And if I'm correct, Claimant has

6    been ordered to respond in full by the 30th of this month.  We

7    have really been waiting on the resolution or an answer to

8    those interrogatories before pursuing additional discovery.

9    We have not been served any discovery by the Claimant.

10           THE COURT:  Very well.  And Mr. Michael, any

11   discovery that you have sought?

12           MR. MICHAEL:  Eric is correct in that regard, Your

13   Honor.  We do have a order by Judge Rankin that he issued on

14   December the 9th, I think it was document 49, compelling some

15   further responses to the special interrogatories.  We -- and I

16   have, actually, a question for the Judge.  We obviously have a

17   concern, a serious concern, about Judge Rankin's order, and I

18   suppose in one -- one way of proceeding, we will respond to

19   Judge Rankin's order, and it's due, as Mr. Heimann said, on

20   December the 30th, but we are going to have -- we are

21   going -- there are going to be some issues created as a result

22   of what we may respond to because we have a strong

23   disagreement with Judge Rankin's analysis of the prevailing

24   law regarding responses to special interrogatories.  That's

25   one way we can do it, and I'm sure that after we respond that

 1   the U.S. Attorney's Office will probably seek some further

 2   remedies, whether it's a motion to strike or a motion for some

 3   sanction.

 4          The other alternative, which I would probably want

 5   the Court's advice on, is I would like to challenge Judge

 6   Rankin's order if there's some orderly process of having this

 7   Court review that particular order.  And I looked in the

 8   rules, and I can't find any particular rule that says how we

 9   would do that in this particular court, whether it's a motion

10   for reconsideration of the order or a -- some objection to it

11   in some way, rather than going through this whole process of

12   giving answers that the Government will deem very incomplete

13   and then they will try to seek a further remedy on it.  So I

14   wanted to raise that issue before this Court in a real frank

15   and open manner.

16          THE COURT:  All right.  Mr. Heimann, anything you

17   have to suggest?

18          MR. MARTIN:  Your Honor, Levi Martin here.  That was

19   my motion, so probably best if I speak to it.

20          THE COURT:  All right.

21          MR. MARTIN:  As the Court knows, there is a provision

22   under the local rules that allows for the District Court to

23   review a Magistrate Court's decision.  I don't have that rule

24   number off the top of my head, but it's there.  I know it's

25   there.  You've got to do it within 14 days, so by my

1    calculation that's about three days from now.  In any event --

2    maybe five days.  In any event, it appears as if, what I'm

3    hearing counsel say, that he's not going to give us what

4    Magistrate Rankin said he's supposed to give us, so it

5    probably would be best if he went ahead and did that and we

6    get this figured out, because we're pretty comfortable with

7    what the law says, and we're pretty comfortable with what

8    Magistrate Rankin's understanding of the law is.  And so if

9    that's what they want to do, that would be better than

10   prolonging it.  Because I can say this much:  My review of the

11   initial pretrial deadlines was that somewhere in the middle of

12   March discovery is going to close, and this issue really

13   should be addressed before we move on to other discovery.  So

14   I'd hate for this to, you know, somehow mess with other

15   deadlines.  So I'm not sure if --

16         MR. MICHAEL:  I agree with that, Your Honor.  We will

17   do that.  We will file a motion for this Court to reconsider

18   Judge Rankin's December 9th order compelling further

19   responses.  It -- in the whole scheme of things in terms of

20   what's going on in all the circuits, it's an important issue.

21   It's been addressed in a number of circuits very recently, and

22   apparently the battle is still ongoing.  So with the Court's

23   permission, we'd like to timely file a motion for the Court's

24   reconsideration of Judge Rankin's order, and we will get that

25   done within that 14 days from December the 9th.

14-CV-00151-J      Scheduling Conference      12/18/2015      7

1          THE COURT:  Just to assist you, our Local Rule 74.1

2    deals with reconsideration of magistrate judge's action.

3          MR. MICHAEL:  Is that a 14-day window, Your Honor?

4    Was Mr. Levi correct?  Or Mr. Martin.

5          THE COURT:  Yes, it is.  It is 14 days after service

6    of the magistrate judge's order.

7          MR. MICHAEL:  Okay, after service.  Thank you, Your

8    Honor.  So we will do that as far as that's concerned.

9          But I don't, um -- I, I would like that not to

10   interfere with the other issue that's pending before this

11   Court in terms of our motion to suppress and the Court setting

12   a new hearing date on that motion due to, I think, the

13   Government's representation that Detective Parduba was

14   unavailable for any earlier hearing.

15         THE COURT:  Correct.

16         MR. HEIMANN:  That's right, Your Honor.  I just -- I

17   don't want to put it in a written motion, but Detective

18   Parduba, as I understand it, is having his hip replaced next

19   week, and his conflict for the 17th was a presurgical

20   appointment which was necessary for him to continue to go

21   forward with the surgery.  What he told me is that his doctor

22   has said it's at least two weeks minimum, maybe longer, up to

23   a month to six weeks.  So if Your Honor wants to hear from the

24   affiant of the search warrant in an evidentiary hearing, we

25   would ask that that hearing be scheduled sometime in early to

Julie H. Thomas, RMR, CRR                    (303)296-3056

1   mid-February.

2          THE COURT:  Do we need to hear the issue of whether

3   or not the Court wishes to hear that kind of evidence today?

4          MR. HEIMANN:  Well, Your Honor, I'd like to know.

5   One of the things we wrote in our response to the motion, and

6   reiterated in our motion to continue, is that we don't think

7   there's a disputed issue of fact here.  We don't hear the

8   Claimant to suggest that the affidavits that he included as

9   his exhibits were not, in fact, the affidavits that were

10  submitted to the Circuit Court judge or that the warrants were

11  not, in fact, the warrants that were issued by the magistrate.

12  There's nothing in his motion to suggest --

13         THE COURT:  Or that there was a Franks type of issue.

14         MR. HEIMANN:  Yes, Your Honor.  There's nothing to

15  suggest that Detective Parduba -- that there's any falsehood

16  in the affidavit, whether intentional or by reckless disregard

17  for the truth.  There's no suggestion that there's anything

18  that needs to be looked at other than the four corners of the

19  warrant.  The only suggestion that's in the written motion is

20  that the Claimant would like the opportunity to examine the

21  dog handler, but he hasn't suggested any specific fact.  He

22  merely speculates that we might come up with some reason to

23  doubt the dog's credibility, which in the context of a search

24  warrant doesn't really matter.  If the affiant, under Tenth

25  Circuit precedent cited in our response, if the affiant

1   truthfully says the dog was certified and the dog was, in

2   fact, certified, that's enough for the magistrate to rely upon

3   that alert when determining probable cause.  So it's different

4   from a nonwarrant search.

5        And so I'm not sure that there's any specific fact

6   that needs to be resolved to resolve the motion as it stands.

7   And, Your Honor, I don't want to bring the wrong witness, I

8   don't want to bring a witness that's not necessary, and I

9   don't want to begin a direct examination without knowing that

10  there's a particular fact Your Honor wants to know about or

11  that's disputed.  And so I need some direction from you.

12  Obviously if you want to hear a witness, the Tenth Circuit has

13  said that's within your discretion, and we'll bring that

14  witness, but I don't want to do that if it's not necessary and

15  all we need is a hearing for argument.

16        MR. MICHAEL:  Your Honor, can I address that, Your

17  Honor?

18        THE COURT:  Yeah, you may respond, Mr. Michael.

19        MR. MICHAEL:  I don't have any objection to this

20  hearing going out into February, if the Court does decide to

21  conduct an evidentiary hearing.  Probably we would want it

22  after February the 24th, when I look at my own calendar.  So I

23  don't have any problems with that.

24        As far as what Mr. Heimann said about Detective

25  Parduba, there's an argument that can be made that this Court

1   doesn't necessarily need his testimony regarding the issues as

2   to Detective Parduba in dealing with the motion to suppress

3   and quash, but there definitely is a need for us to have the

4   testimony of the dog handler in this case because that's a

5   critical component in the Government's attempt to establish

6   probable cause.  And the Supreme Court just -- in *United*

7   *States versus Jones*, just two years ago, two and a half years

8   ago -- actually, they decided two dog cases; *U.S. versus Jones*

9   is the one that's more relevant to our case -- clearly lays

10  out that, and I think we have it in our brief before the

11  Court, that this whole concept of a dog alert is very -- is

12  something that's being subjected to a lot of serious

13  examination these days, and the *Jones* decision clearly says

14  that we, as claimants, or anybody who's challenging a dog

15  alert must have an opportunity to challenge that dog's

16  reliability, to challenge it in regards to not just its

17  training and certification but in terms of its performance,

18  because the concept of reliability is a broad concept.  And

19  we've been doing that in a number of cases.  And there have

20  been a lot of studies about dog alerts, there's a lot of

21  studies that are just recently coming out about dog -- what

22  constitutes proper training and certification, what

23  constitutes how a dog handler does it, whether a dog does

24  false alerts, a dog is cuing.  All of those issues are very

25  important issues, and *Jones* has opened the door to that, which

1    we've been asking the court to do that for years.

2            And so what we would like to do is certainly have

3    this dog handler testify at an evidentiary hearing on the

4    motion, but we would like to set the hearing out, using the

5    guidelines of *U.S. versus Jones*, submit discovery to the

6    Government, a limited discovery just related to the

7    suppression issue for the list of the witnesses there.  And

8    more specifically, as I was just discussing with Mr. Bustos

9    this morning, we want to discover all of the dog reports

10   regarding the dog's training, certification, and field

11   records, which is the dog's performance.  Those are the

12   traditional things that you always get in discovery, at least

13   on cases when there's a dog alert, and there's no reason for

14   us not to get it in this case.  And then in an evidentiary

15   hearing we want to challenge that dog's performance, because

16   the Government alleges that this dog alerted to this Cessna

17   aircraft and that that dog alert was an essential element of

18   the Government's probable cause in supporting the affidavit or

19   the affidavit supporting the search warrant.  And what's

20   ironic about the whole case is that the dog alerts to an empty

21   airplane.  There's no drugs in the airplane.  So that raises

22   the -- should raise the question to any court about the

23   reliability of this dog and whether it alerted and what it

24   alerted to.  I don't know if the Government has a video of

25   this -- usually they're supposed to videotape these dog alerts

 1   if they have the ability to do so -- or what kind of evidence

 2   they have about how that particular dog alerts, how he's

 3   training, how he's supposed to alert, is he a passive or an

 4   aggressive dog, what has he done in the past, has this dog

 5   been trained to do what they call extinction training so the

 6   dog doesn't alert to currency, because the dogs traditionally

 7   learn how to alert to currency and they become currency

 8   alerting dogs, or how the dog alerts to residual orders, was

 9   there a residual odor, and that kind of stuff.  It's just a

10   complex equation.

11        So I feel that's a critical aspect of the motion to

12   suppress, and we need discovery from the Government regarding

13   all that stuff, as *Jones* mandates, and then we would want an

14   evidentiary hearing at least on that.

15        And if the Court is going to have an evidentiary

16   hearing and we are going to kick it over to February, I would

17   think it might be wise or the Court may want to have Detective

18   Parduba available for his own testimony because you never know

19   which way these hearings are going to go.  It may get to a

20   point where, you know, this Court may want Parduba's

21   testimony.  And if he's completed his hip replacement surgery

22   and he is available and we move this thing out way to the end

23   of February, it might be helpful to the Court, if we're going

24   to have an evidentiary hearing on any issue, to have Detective

25   Parduba available.

 1            THE COURT:  Thank you.  I was kind of surprised that

 2   this is even in federal court.  Why wasn't this brought in

 3   state court?

 4            MR. HEIMANN:  The forfeiture, Your Honor?

 5            THE COURT:  Yeah.

 6            MR. HEIMANN:  I think, Your Honor, the state

 7   forfeiture law is limited to state drug crimes, and whether or

 8   not there was a state drug crime I think is less clear than it

 9   is that we have probable cause to believe and the Court's

10   already found the reasonable belief that we can prove that

11   this was drug money, whether it was sold in Wyoming or not,

12   most likely not, and that it was -- that the plane was a

13   conveyance for controlled substances.

14            And, for what it's worth, Claimant is fortunate to be

15   in federal court because the procedural protections and the

16   rules here are significantly more understood and clear and

17   black letter than in state civil forfeitures.

18            MR. MICHAEL:  May I respond to that, Your Honor?

19            THE COURT:  Surely.

20            MR. MICHAEL:  Okay.  I assume that was Mr. Martin

21   speaking.

22            THE COURT:  No.

23            MR. HEIMANN:  Mr. Heimann.

24            THE COURT:  That was Eric Heimann.

25            MR. MICHAEL:  Well -- oh, it was Eric.  Well, that's

 1  a very, very cautious response, Your Honor, and I think

 2  there's a bigger response.  And the bigger response is that,

 3  A, there is this policy called equitable sharing that is

 4  promulgated by the United States Attorney's Office, the

 5  Department of Justice.  And equitable sharing, if there is a

 6  state seizure of property and the state merely proceeds based

 7  on its own state laws, then the state law usually controls the

 8  disposition of the seized funds.  Now, I'm not too sure about

 9  how Wyoming does it, but in, like, for example, California

10  most of that seized money goes into the general fund, and it

11  pays down the state debt, it pays for schools, it pays for

12  roads, it pays for education, and a very small percentage goes

13  to the seizing agency.  Under federal law, though, if a state

14  seizes some property and they give it over to the feds and the

15  feds adopt it, the policy is called adoption, which happened

16  here, then the policy of equitable sharing kicks in, and

17  equitable sharing allows the federal government, if they

18  obtain a forfeiture of that property, to return up to

19  80 percent of that value of that property to the state seizing

20  agency, not to the State of Wyoming, but to the state seizing

21  agency, which is a law enforcement agency.  And that law

22  enforcement agency can use those funds for any purpose they

23  want, and it doesn't have to go into the state fund, and it

24  doesn't -- it completely sidesteps state law regarding the

25  disposition of forfeited property.

1           So that's the reason that the state agents use this,

2     take these seizures, local state seizures, and hand it over to

3     the feds, even though Eric is correct that the federal law is

4     a little more structured than the state laws are regarding

5     forfeitures.  But the results of that is, of course, you can

6     get easier forfeitures under federal law than you can under

7     state law.  So it's because of this equitable sharing.

8           Now, that -- there have been a lot of allegations

9     that that's a corrupt practice, okay, because it allows these

10    state agents to get around state law which controls the

11    disposition of forfeited property, and in response to that the

12    U.S. Attorney just in the last I think six months, if I'm not

13    wrong, has issued a policy rule saying that the federal

14    government will no longer adopt state seizures unless the

15    federal government is a active actor in the investigation and

16    seizure or at least it was done as a result of a joint task

17    force in which the federal government was a part of the joint

18    task force.  Without those circumstances, the federal

19    government no longer adopts these state seizures.

20          Now, this particular rule, and I really -- came into

21    being after the federal government adopted this particular

22    case, so we -- I don't think it's a retroactive rule, so we

23    can't, like, take advantage of that, but certainly it should

24    cast some shadow upon this case being in federal court.  So I

25    thought that was a rather pointed question you asked, and

 1  that's my explanation for why this now is in federal court.

 2        THE COURT:  Thank you, Mr. Michael.  And I think

 3  you've well summarized what you put in your, your motion to

 4  suppress with regard to that issue.

 5        All right.  Anybody have anything further they wish

 6  to say about these matters?

 7        MR. HEIMANN:  Your Honor, when it comes to the dog

 8  handler, if the Claimant wants to pursue discovery on the dog

 9  handler's records, we'll accept service, and we'll evaluate

10  those requests when they come in, and we'll provide the

11  records we believe we are required to provide, but it's not in

12  his motion, and I don't think it's appropriate to turn the

13  suppression hearing into the deposition of the dog handler.

14  There's not one thing in this motion that suggests a definite,

15  specific, articulable, disputed fact.  And if the Claimant

16  wants to withdraw the motion, find such a fact, and refile it,

17  then he would be entitled to an evidentiary hearing.  At this

18  point he's not.  And I will bring whatever witnesses Your

19  Honor wants, but I am afraid that if the dog handler comes to

20  a suppression hearing, it will become his deposition.

21        MR. MICHAEL:  Well, I don't know that -- of course,

22  there's a parallel between a deposition and testimony at an

23  evidentiary hearing.  They're pretty much basically the same.

24  I'm not too sure what that means.  When a person takes the

25  witness stand, you're going to ask them the same kind of

1   questions that you would ask them in a deposition.  So I don't

2   think it's necessary for us to go through a deposition before

3   we have an evidentiary hearing.  There won't be any -- there

4   won't be any mystery.  A court -- what I would suggest is that

5   we do discovery on that, the documentary evidence, which I

6   don't think Mr. Heimann would contest that we have a right to

7   all those records, and then we can, uh -- if -- maybe with the

8   Court's permission we can file a reply brief rather than to

9   refile the motion, because I think that your local rules here

10  don't allow us to file a reply brief without the permission of

11  the Court.

12         And so maybe what we could do is the Judge can say do

13  your discovery regarding all the dog stuff and the other

14  ancillary stuff to the motion, and then after we get the

15  discovery allow us to file a reply brief, and maybe that will

16  address all the concerns that Mr. Heimann has about an

17  evidentiary hearing.  We certainly can include that in the

18  reply brief, maybe beef up our request for an evidentiary

19  hearing which was in our original motion in a reply brief.

20  We've got plenty of time to do that.  It's the middle of

21  December, and we're probably going into late February if this

22  Court allows an evidentiary hearing.  That's what I would

23  suggest, discovery, reply brief, and then the Court can then

24  determine -- set a tentative evidentiary hearing, and the

25  Court can make its own determination on it.

1            THE COURT:  All right.  Thank you, Counsel.

2            It seems to me that this case is one that, whichever

3    way the Court is going to go, is ripe for an appeal to the

4    Tenth Circuit Court of Appeals and is one that's going to go

5    there.

6            I have carefully reviewed the Claimant's motion to

7    suppress and to quash or to quash the search warrant, as well

8    as the attached declaration of counsel, which was very well

9    prepared and certainly illustrates that Mr. Michael is

10   thoroughly conversant and familiar with all of the issues

11   connected with forfeiture and certainly is intending to

12   utilize every avenue that he -- is available to him to succeed

13   in this case.  However, I have to totally agree with the

14   Government's counsel in this matter.  At this point there

15   appears to be nothing suggested in the submissions that we

16   have received so far in behalf of the Claimant that would tend

17   to impeach or raise issues concerning the use of the dog.

18           Interestingly, the most recent case, which was

19   authored by Stephanie Seymour I think in 2013, involving a dog

20   sniff and a warrant situation bears amazing similarity to the

21   case that's under consideration here.  There were some

22   differences in terms of the aircraft was noted by the federal

23   authorities flying in to Liberal, Kansas, which appeared

24   suspicious in that it flew from a location in New Mexico north

25   to Liberal, but interestingly in that case part of what made

1   it suspicious was an earlier flight of an airplane that wasn't

2   even described.  And here we have the exact same airplane in

3   an earlier flight with suspicious circumstances and

4   weather-related issues on both occasions.  And it was weather

5   there that was, interestingly, what brought it and anchored it

6   to Liberal in Kansas.  There was a dog sniff in that occasion,

7   and that dog was proved to be ultimately 58 percent accurate,

8   and that dog sniff was upheld in that case.

9         In an earlier case involving dog sniff authored by

10  David Ebell, a very respected senior circuit judge, the dog

11  was I think 71 percent accurate, and that was found sufficient

12  for -- in that situation.

13        All of this is, it seems to me, to be a long way

14  around the issue of in the absence of any discovery that's

15  taken place that would in any way show me that that dog and

16  its certification in the last month prior to the search in

17  this matter by a certifying organization raises any fact issue

18  presently that would compel me to order a hearing in this

19  matter.  And I don't see any reason to take evidence in the

20  absence of something that would dictate, dictate that being

21  done.

22        Now, maybe discovery will reveal something if the

23  parties go forward, but that's the reason I asked or inquired

24  as we started this hearing what discovery had been conducted

25  because that is a matter of, obviously, significant interest

 1    in this matter.  There's nothing.  And the magistrate judge,

 2    Bruce Waters in Cody, Wyoming, I'm really looking at what was

 3    before him.  The affidavits are significant, I think, in that

 4    I think that they were prepared between roughly 4:00 in the

 5    afternoon and 6:00 a.m. the next morning and as comprehensive

 6    as they are.  But that's not me taking a fine magnifying glass

 7    and looking at them in the eyes of an attorney either, which I

 8    will be glad to do when I get the briefs in this matter.

 9          And I want to make sure that Mr. Michael has

10    preserved his objection to my ruling in this case.  I think he

11    has adequately done so, but if he feels he needs to say

12    something else, I want to hear.

13          MR. MICHAEL:  Your Honor, it appears to me that you

14    are saying that at this point you don't see anything that

15    would cause this Court to allow for an evidentiary hearing,

16    but will the Court allow us to do the discovery that we would

17    like to do and file a reply brief so that the Court can

18    further consider the discovery evidence in regards to this

19    particular case?  Because I --

20          THE COURT:  Are we -- has discovery been closed?

21          MR. MARTIN:  No.

22          MR. MICHAEL:  Excuse me, Your Honor?

23          THE COURT:  I don't think discovery has been closed.

24          MR. MARTIN:  May.  There's plenty of time.  Actually,

25    I'm sorry, it's the middle of March.

 1          THE COURT:  It's the middle of March.  Yeah, I don't

 2   want to preclude you from seeking some discovery, and I don't

 3   want to preclude the Government from raising any issue they

 4   feel that they might have concerning the breadth or the area

 5   of discovery at this point, but I just don't see that I have a

 6   fact issue that I need to commit myself to at this point for

 7   an evidentiary hearing.

 8          MR. MICHAEL:  Well, of course, we will pursue

 9   discovery, and we also have to address the reconsideration of

10   Judge Rankin's order, but will this Court -- and we will do

11   that discovery without delay.  And if the Court is disinclined

12   to set an evidentiary hearing, which is how I interpret the

13   Court's comments, will the Court allow us to, after we

14   complete discovery, file a supplemental or reply brief

15   following that discovery?

16          THE COURT:  Well, I -- I don't know.  I assume that

17   you're -- here's what I see happening by your request.  Within

18   the next five days or so I'll be getting a motion to

19   reconsider pursuant to our Local Rule 71.1 on the Government's

20   discovery from the Claimant in this matter.  So far as I'm

21   concerned, this case presently, if there is going to be no

22   discovery, is ripe for a hearing -- I mean, ripe for a brief

23   filing and an oral argument.  If it's necessary to file a

24   brief and have an oral argument, I'm pleased to give you those

25   times and dates.  However, what I'm hearing from you is that

1   you wish to use your opportunity to conduct some discovery on

2   the part of the Claimant, which the Government may --

3          MR. MICHAEL:  Correct.

4          THE COURT:  -- or may not object to.  So I think we

5   need to let you do that at this point.  And once discovery

6   winds up, you need time to brief this issue and submit it to

7   the Court with anything that you wish to attach.  And if I

8   feel I need a hearing based upon what you have submitted, I

9   can order it, but I know that the Tenth Circuit has

10  approved -- has upheld search warrants on 58 percent accuracy

11  on animals.  And would further say with regard to the empty

12  aircraft I don't know how you get around the fact that three

13  heavy bags were removed from that Cessna aircraft and hauled

14  off to a hotel.  It was unloaded.

15         MR. MICHAEL:  You mean three empty bags with no

16  contraband.

17         THE COURT:  Well, I don't know what they were.

18         MR. MICHAEL:  Well --

19         THE COURT:  One was --

20         MR. MICHAEL:  -- that's the reality.

21         I would like to make one comment about all that.  And

22  I appreciate the Court's comments about whatever my skill

23  level is or may be.  I think that Eric Heimann and Mr. Martin

24  have pretty much the same skill level when it comes to dealing

25  with these complex issues on forfeiture cases.  But I made an

1   earlier comment about dogs and the probative value, and I

2   believe -- I'm not too sure about the case that you cited, and

3   I'll talk to Mr. Bustos about what the Court was referring

4   to --

5           THE COURT:  They're in, they're in -- they're in

6   Mr. Heimann's reply brief.

7           MR. MICHAEL:  Ah, they were the ones in the reply

8   brief, okay, or their opposition brief?

9           THE COURT:  Yeah, correct.

10          MR. MICHAEL:  Okay, I'll look at those cases.  But I

11  will say that I've stepped into many circuit courts for oral

12  argument on these issues, and some of the cases that get cited

13  by the courts, the issue of a dog, a dog's training and the

14  dog's performance, have sometimes not really been fully

15  litigated or fully briefed or are cases where the defense has

16  not, either through inadvertence or a lack of skill or a lack

17  of thoroughness, not really dealt with those issues in a

18  thorough way.  And sometimes the courts make these decisions

19  based on a bare-bones showing by the Government.

20          The issue of a dog alert is a very, very important

21  issue before the courts these days, and I really like, in any

22  case that I have, to have an opportunity to fully explore it

23  so that what this Court is determining is based on the

24  temporary state of the law in a fully disputed environment

25  where the Court is fully informed by both sides.

1              And I'll look at those two cases to see what happened

2       in those cases, but the recitation about a dog being

3       some percent accurate in some training or certification

4       process is to me just the tip of the iceberg about the issue

5       of dogs and what value they have or what probative value they

6       have in establishing probable cause.

7              THE COURT:  Well, I recognize --

8              MR. MICHAEL:  So thank you for the opportunity, Your

9       Honor, though, to do that, to conduct the discovery that we

10      want to conduct and then ask this Court for some

11      supplemental -- in some supplemental brief ask this Court,

12      based on that, to conduct an evidentiary hearing.  We will do

13      that.

14             THE COURT:  Very well.  I recognize all you've said

15      because there are lots of dog cases.  You know, your *Harris*

16      *versus Florida* that you rely upon pretty heavy or *Florida*

17      *versus* -- the Florida case, you know, was not a warrant case

18      and was postured quite differently than what we're seeing in

19      this case.  And, of course, we have to remember that every

20      presumption goes in favor of the work of the magistrate in

21      this case and his determination of probable cause.  Unless

22      there are facts or circumstances that would seriously impeach

23      that search warrant, then suppression shouldn't be granted,

24      would be my --

25             MR. MICHAEL:  Well, I appreciate that.  We are also

1  relying on *U.S. versus Jones*.  And I'll tell you from the view

2  from defense counsel, we're always fighting an uphill battle.

3  That's how we always see it.  And luckily the Court has given

4  us some options.  Even though there's a magistrate that issued

5  the search warrant, we still have our options to challenge

6  that.  But you're right, Your Honor, it's definitely an uphill

7  battle.  I'm comfortable with that.

8           THE COURT:  As a defense attorney, you're doing God's

9  work, and I respect it in every way.

10          MR. MICHAEL:  Well, I'm going to quote that.

11          THE COURT:  Feel free.

12          MR. MICHAEL:  Thank you, Your Honor.

13          THE COURT:  Anything further, Mr. Heimann?

14          MR. HEIMANN:  No, Your Honor.  Thank you.

15          THE COURT:  Mr. Bustos?

16          MR. BUSTOS:  No, Your Honor.  Thank you.

17          THE COURT:  Mr. Michael?

18          MR. MICHAEL:  No, nothing further, Your Honor.

19          THE COURT:  Thank you for calling in.  We will stand

20  in recess then.

21          MR. MARTIN:  Thanks, Judge.

22       (Proceedings concluded 3:10 p.m.,

23       December 18, 2015.)

24

25

1                          C E R T I F I C A T E

2

3

4            I, JULIE H. THOMAS, Official Court Reporter for the

5    United States District Court for the District of Colorado, a

6    Registered Merit Reporter and Certified Realtime Reporter, do

7    hereby certify that I reported by machine shorthand the

8    proceedings contained herein on the aforementioned subject on

9    the date herein set forth, and that the foregoing pages

10   constitute a full, true and correct transcript.

11           Dated this 1st day of September, 2016.

12

13

14

15                       ___/s/ Julie H. Thomas___

16                          JULIE H. THOMAS
                          Official Court Reporter
17                        Registered Merit Reporter
                        Certified Realtime Reporter
18                          CA CSR No. 9162

19

20

21

22

23

24

25

**Exhibit 4**

1       IN THE UNITED STATES DISTRICT COURT

2       FOR THE DISTRICT OF WYOMING

3   _____

    UNITED STATES OF AMERICA,     DOCKET NO. 14-CV-151-J

4

      Plaintiff,      Cheyenne, Wyoming

5                August 10, 2016

      vs.          10:08 a.m.

6

    ONE CESSNA AIRPLANE, MODEL

7   NUMBER TU-206 BEARING TAIL

    NUMBER N6214V AND SERIAL

8   NUMBER U206-1189; $259,717 US

    CURRENCY,

9

      Defendants.

10  _____

11      TRANSCRIPT OF HEARING PROCEEDINGS

            STATUS CONFERENCE

12    BEFORE THE HONORABLE ALAN B. JOHNSON

          UNITED STATES DISTRICT JUDGE

13

   APPEARANCES:

14  For the Plaintiff:    C. LEVI MARTIN (By Teleconference)

              ERIC J. HEIMANN

15         Assistant United States Attorneys

             DISTRICT OF WYOMING

16        2120 Capitol Avenue, Room 400

             P.O. Box 668

17        Cheyenne, WY  82003-0668

18  For the Defendants:    DAVID M. MICHAEL

              LAW OFFICES OF DAVID MICHAEL

19        One Sansome Street, Suite 3500

             San Francisco, CA 94104

20        (By Teleconference)

21  Court Reporter:     Janet Davis

              Registered Diplomate Reporter

22         Federal Certified Realtime Reporter

             Federal Official Court Reporter

23         2120 Capitol Avenue, Room 2226

             Cheyenne, WY  82001

24         (307)635-3884/jbd.davis@gmail.com

25  Proceedings recorded by digital stenography; transcript

    produced with computer-aided transcription.

DOCKET NO. 14-CV-151-J  STATUS CONFERENCE                2

1    (Proceedings commenced 10:08 a.m., August 10, 2016.)

2    (Proceedings in chambers in the presence of the Court and

3   Mr. Heimann; counsel participating by teleconference:  David

4   Michael, Levi Martin.)

5        MR. MICAHEL:  Good morning, Your Honor.  This is David

6   Michael.  Your Honor, I am at an airport right now, so I'm

7   going to apologize.  You know how those PA systems are in

8   airports when they come on, and I apologize if that interferes

9   with the status in any way.

10        THE COURT:  Thank you, Mr. Michael.  It is good to

11   hear your voice again.

12        MR. MICHAEL:  It has been awhile.

13        THE COURT:  It has been.  I have present in chambers

14   with me Eric Heimann from the office of the United States

15   Attorney, Assistant United States Attorney.

16        And, Levi Martin, are you on the telephone as well?

17        MR. MARTIN:  I am.  Good morning, Judge.

18        THE COURT:  Good morning.  Are you located upstairs?

19        MR. MICHAEL:  No, he's on the conference call with me.

20   I called in first, Your Honor.

21        MR. MARTIN:  I'm in Salt Lake.

22        THE COURT:  Salt Lake.

23        The matter that brings us together this morning is an

24   issue of initial -- creating an initial pretrial order so that

25   this case can go forward.  The case is captioned United States

DOCKET NO. 14-CV-151-J  STATUS CONFERENCE          3

1   of America, Plaintiff, against One Cessna Airplane and $259,717

2   of United States Currency.  The property claimant is Scott

3   Michael Lewis, and this is under Docket 14-CV-00151, so it has

4   been pending for a lengthy period of time.

5          The first question that I have really deals with the

6   caption of the case and that is whether or not that caption

7   should be amended given Mr. Lewis' relinquishment of any

8   interest in the Cessna aircraft in this matter, to eliminate it

9   from the caption.

10         MR. HEIMANN:  Your Honor, we do intend to complete the

11   forfeiture of the airplane through the criminal case where

12   Mr. Lewis was convicted and Your Honor included forfeiture of

13   that plane as part of his sentence.  Procedurally, we need to

14   make some filings in the criminal case to get that done and

15   then would likely move to dismiss that property from this

16   matter.  Whether we change the caption now or when we make that

17   filing does not matter to me, but we do need to get a couple

18   things filed in the criminal case and get some orders in that

19   case before we would move to dismiss it here.

20         But we do intend to do that, so our focus should be on

21   the money.

22         THE COURT:  Excellent.  And given the schedule that we

23   have, it seems to me that can all occur within due course at

24   appropriate times.

25         MR. HEIMANN:  And, Your Honor, I expect we would get

DOCKET NO. 14-CV-151-J  STATUS CONFERENCE                    4

1   that taken care of within the next -- our filings within the

2   next couple weeks in the criminal case, certainly, and in this

3   case within a week or two after the criminal -- an order is

4   issued in the criminal case.

5        THE COURT:  Very well.

6        Any comment, Mr. Michael?

7        MR. MICHAEL:  Yeah, I completely concur with

8   Mr. Heimann.  It should be removed from the case.  It is no

9   longer property subject to forfeiture.  It is a civil matter.

10        THE COURT:  Certainly we want to avoid any possible

11   juror confusion by having it remain within the caption of the

12   case.

13        MR. MICHAEL:  You are looking way downstream, Your

14   Honor.

15        THE COURT:  Correct.

16        The second matter is a pending matter, and just to

17   help everyone move forward in this case, I want to announce my

18   intention at this point to find that there's both procedural

19   and constitutional standing that has been properly alleged and

20   brought before the Court by the claimant, Mr. Lewis, in this

21   case.  And I believe what that will implicate will be a

22   granting of the motion to reconsider the Magistrate's ruling in

23   this matter and a finding on the part of the Court that there

24   has been an error of law of significance that has been made in

25   this case.

JANET DAVIS, RDR, FCRR              jbd.davis@gmail.com

DOCKET NO. 14-CV-151-J  STATUS CONFERENCE                    5

1      Our opinion will take into consideration Tenth Circuit

2   pronouncements that have been made that were not discussed in

3   the hearing before the Magistrate in this case.  And you can

4   expect to see an order on this matter shortly, and thus --

5   thus, the objections to further answering the interrogatories

6   that were posed would be sustained.

7      MR. MICHAEL:  Your Honor, are you saying that the

8   cases you are going to consider are the ones that were in the

9   briefs that were filed in regards to that reconsideration?

10      THE COURT:  Well, there may be one that was not, but

11   you will -- you will see it.

12      MR. HEIMANN:  Judge, for my understanding, is the

13   order reversing the compulsion order based on the fact these

14   are Rule (g)(6) special interrogatories or based on the

15   substance of the interrogatories and request for documents?

16      THE COURT:  Well, the Magistrate explicitly indicated

17   he was not ruling with regard to the matter of (g)(6) standing.

18   However, as a practical matter, it appears to the Court that he

19   did rule with regard to that issue and indicate that there was

20   not (g)(6) standing.

21      MR. HEIMANN:  Okay.  Thank you.

22      THE COURT:  All right.  The parties are aware of their

23   power to -- the only other thing I would say about what I've

24   just discussed is the issue in this matter seems to create a

25   constitutional confrontation and choice on the part of the

1  claimant.

2      MR. MICHAEL:  I assume you're talking about Article

3  III standing.

4      THE COURT:  Correct.

5      MR. MICHAEL:  Was that briefed, though, in the -- in

6  the objections?

7      THE COURT:  No, it was not.

8      MR. MICHAEL:  Does the Court want us to brief that

9  issue?  Article III standing has been litigated in a lot of

10  circuits.

11      THE COURT:  Yes, it has, and I think I'll resolve that

12  issue for you.

13      The consent to trial, you can consent to try this case

14  before Magistrate Judge Rankin, if that is your choice, by

15  filing the consents with him.  And those consent forms, I

16  think, should have been distributed to the parties.  If they

17  have not, they can be secured through the clerk's office.

18      We would like -- well, let me ask either Mr. Heimann

19  or Mr. Martin whether or not the Government anticipates calling

20  any expert witness in this case.

21      MR. HEIMANN:  Your Honor, in January of this year we

22  filed an expert designation based on the pretrial order as it

23  stood at that time and about one week before the case was

24  stayed on January 27th, so we have filed our expert designation

25  regarding a single expert.

JANET DAVIS, RDR, FCRR                jbd.davis@gmail.com

DOCKET NO. 14-CV-151-J  STATUS CONFERENCE                7

1      THE COURT:  All right.  And you don't anticipate

2  changing that?

3      MR. HEIMANN:  We don't.

4      MR. MARTIN:  We might.

5      MR. HEIMANN:  Well, we might.  We haven't really

6  thought about it, Your Honor.

7      MR. MARTIN:  Eric, we need to probably get in contact

8  with him again because we haven't since January, don't you

9  think?

10      MR. HEIMANN:  I agree.  So I had the benefit of the

11  draft initial pretrial that was handed out by the Court and it

12  does have September 19th as an expert witness deadline for the

13  Government.  Your Honor, I think it is worthwhile for us to

14  recontact our expert.  It has been several months.  And if we

15  have some additional time to redesignate or designate a new

16  one, if necessary, we would like that.

17      THE COURT:  Very well.

18      MR. MICHAEL:  Your Honor, may I interject something

19  before we get into the issues of trial?  There's also pending

20  before this Court a motion to suppress.  And the motion to

21  suppress has been filed, the opposition has been filed, but we

22  still have not filed a reply.  I believe that this case was

23  stayed at some point in time.

24      And I'd like to discuss the proceedings on the motion

25  to suppress.  I think it is an evidentiary hearing that we have

JANET DAVIS, RDR, FCRR          jbd.davis@gmail.com

DOCKET NO. 14-CV-151-J  STATUS CONFERENCE          8

1   a right to.  And we'd also like to, now that the stay is no

2   longer required, file our reply in support of that motion to

3   suppress and ask the Court to set that for an evidentiary

4   hearing.

5        I think the motion was filed on November the 2nd and

6   the opposition was filed November the 16th.

7        MR. HEIMANN:  Your Honor --

8        THE COURT:  Is the motion ripe?

9        MR. MICHAEL:  Motion to suppress evidence.

10        THE COURT:  Is it ripe?

11        MR. MICHAEL:  Excuse me, Your Honor?

12        THE COURT:  Well, we had postponed ruling on that

13   motion.

14        MR. MICHAEL:  I didn't follow what you said, Your

15   Honor.

16        MR. HEIMANN:  Your Honor, if I may, we do need to

17   schedule whatever litigation is necessary to decide that

18   motion.  We did have a status conference regarding it in

19   December or January, is my memory, prior to the stay, and the

20   question was whether there were factual allegations requiring

21   an evidentiary hearing or not.  And my memory is we have left

22   it at discovery requests regarding the dog needed to be done

23   and the claimant needed to supplement his motion to create an

24   issue of -- disputed issue of fact regarding either the dog or

25   the search warrant.

1      We do need some schedule on that.  We had -- and more

2  in general, we have a number of discovery requests that were

3  submitted -- that were served by the Government, served by the

4  defendant.  They had deadlines at the time of our stay, some of

5  which had passed, some of which hadn't, so we also need to talk

6  about the discovery deadlines for discovery requests that had

7  already been served at the time of the stay.

8          THE COURT:  All right.  So --

9          MR. MICHAEL:  And I believe our position on the

10  suppression issue, Your Honor, is that in these kind of unique

11  forfeiture proceedings that we have a right to have a hearing

12  on the suppression motion prior to further litigation in the

13  case.

14          THE COURT:  Well, we've got to get this case moving.

15  If you want to just delay it further --

16          MR. MICHAEL:  No, I want to have a hearing.

17          THE COURT:  -- I'm not going to tolerate it.  So let's

18  proceed with this scheduling conference and we will see how we

19  end up.

20          I note that the claimant had filed a motion to

21  suppress in which he argued that the dog that was involved in

22  the sniff was not properly certified.  I orally denied the

23  motion in a status conference and held that there need not be

24  an evidentiary hearing at this time, the main rationale being

25  that the claimant was just guessing about the dog's credentials

JANET DAVIS, RDR, FCRR          jbd.davis@gmail.com

DOCKET NO. 14-CV-151-J  STATUS CONFERENCE          10

1   and had not served any discovery requesting information on the

2   dog.

3          I anticipate that the Government [sic] will serve

4   discovery on the Government about the dog and then refile its

5   motion.

6          MR. HEIMANN:  Your Honor, that is my memory of our

7   hearing.  I guess I didn't realize that you had actually orally

8   denied it.  I know you had mentioned that you believed it

9   wasn't going to be granted, but I'm glad that we have a note

10  that says it was, in fact, denied.

11         THE COURT:  The expert witness for the defendant would

12  follow one month later, approximately October 24th, 2016; would

13  anticipate fact discovery, including expert witnesses'

14  depositions, winding up on November 14, 2016; with dispositive

15  motions and any further motion to suppress evidence based upon

16  dog sniff or whatever that is derived from that discovery that

17  is conducted in this case to be filed on or before December

18  7th, 2016, with responses on December 21st, 2016 and replies on

19  or before December 28th, 2016.

20         If you wish, I can set a hearing date between

21  completion of fact discovery and the dispositive motions should

22  that be necessary with regard to any suppression motion that is

23  filed.

24         MR. MICHAEL:  Is the Court saying that, if the parties

25  wish, you could set a hearing on that particular motion to

JANET DAVIS, RDR, FCRR               jbd.davis@gmail.com

DOCKET NO. 14-CV-151-J  STATUS CONFERENCE               11

1  suppress between the completion of fact discovery and the

2  dispositive motion date of December 7th?

3         THE COURT:  Yes, hopefully giving you time to do

4  whatever you need to do in that regard.

5         MR. MICHAEL:  Much appreciated, Your Honor.  Yeah, I

6  can discuss that with the Government, and we may come up with

7  an earlier date for that hearing.

8         MR. HEIMANN:  Your Honor, just so I'm clear, does --

9  does the Court consider the current -- the suppression motion

10  that was filed in November of last year to be pending or do you

11  consider it to be decided and that an additional motion needs

12  to be filed to go -- to bring it before the Court again?

13         THE COURT:  I think it was decided and denied because

14  there was not any information or support for it.

15         MR. HEIMANN:  Thank you, Your Honor.  That's what I

16  heard you say, and I just wanted to be clear about that.

17         MR. MICHAEL:  Oh, the motion to suppress was initially

18  denied, Your Honor?

19         THE COURT:  Yes.

20         MR. MICHAEL:  Oh, I thought we had -- and the Court is

21  indicating that we can renew that motion with a request for an

22  evidentiary hearing?

23         THE COURT:  Absolutely.

24         MR. MICHAEL:  If we -- okay.  Thank you, Your Honor.

25         THE COURT:  We're just trying to organize and get this

1  case moving in some sort of orderly fashion because I know how

2  busy your schedule is.

3      MR. MICHAEL:  Were you talking to Mr. Heimann or were

4  you talking to me?

5      THE COURT:  I'm talking to you because you're all over

6  the country, as witnessed by you waiting for your Delta flight

7  at the San Francisco Airport.

8      MR. MICHAEL:  Yes, as it happens, I guess my practice

9  takes me pretty much all over the country, not just provincial.

10      THE COURT:  I understand.

11      December 21 for any responses to dispositive motions;

12  December 28th, replies to dispositive motions.  If there are

13  any motion to strike expert or experts in this matter, they

14  should be filed under the same schedule:  December 7, December

15  21 and replies on the 28th.

16      We would look for a Joint Final Pretrial Memorandum on

17  January 6th, 2017, and on that date any motions in limine would

18  be filed, with responses on the 20th of January, replies on the

19  27th and our Final Pretrial Conference would be February 22nd,

20  2017.  So if we had a hearing on your suppression motion at an

21  earlier time, the Court would have plenty of time to rule with

22  regard to that motion.

23      We would look for a jury trial --

24      MR. MICHAEL:  All right, Your Honor.

25      THE COURT:  I'm sorry.

JANET DAVIS, RDR, FCRR          jbd.davis@gmail.com

DOCKET NO. 14-CV-151-J  STATUS CONFERENCE          13

1      Our jury trial would be set on March 6th, 2017,

2  commencing at 1:30.

3      On February 20th we would like to get your voir dire,

4  if we're that -- if we're going to go to trial, jury

5  instructions and any special verdict forms.  And at the same

6  date you would file your evidence with the JERS -- for the JERS

7  system in this matter.

8      The parties at any time can engage in ADR if they feel

9  that is appropriate.  Both magistrates provide mediation

10  services here at no cost to the parties, but that you can

11  certainly reach out to many people in the area who do that same

12  service.  And I'm sure that Mr. Heimann could furnish

13  Mr. Michael a list of outside persons who do ADR.

14      MR. MICHAEL:  And the magistrate judges are available

15  for that also, Your Honor?

16      THE COURT:  They are indeed.

17      MR. MICHAEL:  Okay.  I can discuss that with

18  Mr. Heimann.

19      THE COURT:  And Magistrate Judge Carman, who is

20  located in Mammoth, Yellowstone Park, after the busy season of

21  Yellowstone is completed, which would be the end of summer and

22  the first snowfall, is portable in that he is -- has a Cessna

23  aircraft that he can travel in.

24      And Magistrate Rankin, for that matter, is learning to

25  fly and owns his own airplane.

1       MR. MICHAEL:  He have a Cessna also?

2       THE COURT:  Cessna 172.

3       MR. HEIMANN:  Your Honor, I do -- we do need to

4  talk -- and I don't know if this is something we should address

5  with the magistrate judge or if we can address it with you now:

6  There were Rule 33 and Rule 34 discovery requests made by the

7  Government on -- we sent them via e-mail on December 22nd of

8  2015.  I'm not sure exactly when they arrived by certified mail

9  with Mr. Michael.

10       No responses were received to those prior --

11       THE COURT:  The case had been stayed, I think.

12       MR. HEIMANN:  Well, Your Honor, actually I think the

13  deadline probably passed before the stay was issued on January

14  27th.  Regardless, I would request a deadline for the

15  defendant -- or the claimant to respond to those requests.

16       Also, we received discovery requests from the

17  claimant.  They were sent by Fed-X and e-mail on January 8th

18  and I expect we received them in our office the Monday after.

19  We had time remaining when the case was stayed on our response

20  deadline.  But we -- they deserve a deadline for that as well.

21       And finally, we had served additional -- well, no,

22  that's not true.

23       Those are the two that are out there in terms of

24  discovery requests that were pending or overdue at the time of

25  the stay, and I would request that the Court set a deadline for

1  defendant to respond to the Government's responses which were

2  due in mid-January and a deadline for the Government after that

3  date to respond to the -- his requests that had been pending.

4  And I don't have a strong opinion about whether it should be 15

5  days and 30 days or how you want to do that, but I think a

6  solid deadline is important for those requests.

7      THE COURT:  I take it from your response and your

8  statement that you're ready to respond?

9      MR. HEIMANN:  Your Honor, I know Mr. Martin and I were

10  working on our responses when the case was stayed.  We will

11  also -- and we were -- would have, I believe, reached out to

12  the claimants and Mr. Michael to say where was his response if

13  we hadn't known about the Indictment being returned against the

14  claimant in January and expected the stay to come.

15      But technically, they were overdue before -- before

16  the stay was actually issued.

17      THE COURT:  All right.  Well, Mr. Michael, it seems

18  reasonable that there be a -- at least to start the discovery

19  process.  How is your schedule looking to get that -- those

20  submissions?

21      MR. MICHAEL:  I think 45 days out would be reasonable,

22  Your Honor, although we may -- I don't want to concede anything

23  here.  We may -- when we renew the motion to suppress, we may

24  at that time ask the Court to stay discovery pending

25  resolution, and we will cite some authority for that.  But I

1  think it is appropriate for now if the Court would set that out

2  45 days for discovery compliance and both parties can work on

3  that.  45 to 60 days is fine with us.

4       THE COURT:  Why so long?

5       MR. MICHAEL:  45 days is fine.  Well, I actually

6  haven't reviewed the Rule 33 and 34 discovery that was

7  requested yet, so that's why.

8       MR. HEIMANN:  Your Honor, the proposed Initial

9  Pretrial Order has fact discovery ending on November 14th, and

10  45 to 60 days is going to put us hard on that deadline for

11  discovery that -- for what's already been issued, not including

12  what we expect will be reissued because the special

13  interrogatories are going to be reserved under Rule 33 and 34.

14       So I think -- I also expect there's going to be some

15  conflict regarding discovery because I don't think there's

16  going to be adequate answers made, and we're going to be back

17  before the Magistrate or Your Honor on those issues.  We need

18  deadlines that are going to make sense with November 14, or

19  we're just going to be back here redoing this schedule.

20       THE COURT:  Very well.  I think from what you have

21  indicated you will be able to have your discovery here by

22  September 1st and responses by the defendant on or before

23  September 15 -- September 19.

24       MR. HEIMANN:  I'm sorry, Your Honor?

25       THE COURT:  September 19.

JANET DAVIS, RDR, FCRR             jbd.davis@gmail.com

DOCKET NO. 14-CV-151-J  STATUS CONFERENCE                    17

1       MR. HEIMANN:  So his deadline to respond to the

2   discovery we've already given him is after our deadline?

3       THE COURT:  Yes.

4       MR. HEIMANN:  Even though we served our discovery

5   first and he was overdue at the time of the stay and had

6   additional time to respond?

7       THE COURT:  Yes.  You're the all-powerful government.

8       MR. HEIMANN:  Respectfully, Your Honor, I would

9   request that at a minimum the response dates for the

10   already-issued served discovery be the same.  There's no reason

11   the defendant should get extra time when we served ours first

12   and he was late at the time of the stay and we had additional

13   time.

14       THE COURT:  Okay.  I'm not going to argue with you.

15   Sorry.

16       MR. HEIMANN:  Understood, Your Honor.

17       THE COURT:  Next issue.

18       MR. MICHAEL:  That's all the issues I have, Your

19   Honor.

20       MR. HEIMANN:  Your Honor, I think that's everything.

21   I don't have anything else other than what we have discussed.

22       THE COURT:  There is certainly nothing that precludes

23   any of the parties from filing their dispositive motions at any

24   time prior to the deadlines that we have given you, and the

25   Court would be happy to consider them and give them an early

JANET DAVIS, RDR, FCRR              jbd.davis@gmail.com

DOCKET NO. 14-CV-151-J  STATUS CONFERENCE                18

1   setting should that occur.

2        MR. MICHAEL:  Thank you, Your Honor.

3        THE COURT:  Mr. Michael, have you -- I'm sure you

4   have -- utilized the federal JERS system.

5        MR. MICHAEL:  The federal juror system?

6        THE COURT:  It's an evidence display system.

7        MR. MICHAEL:  I have not, Your Honor.

8        THE COURT:  If you need any training on that, if we

9   get to the point where trial is approaching, you may contact

10   the clerk's office and they will give you that training.  There

11   will be some explanation in the Initial Pretrial Order that the

12   Court is giving you.

13        COURTROOM DEPUTY:  There is also --

14        MR. MICHAEL:  I will do that.  Writing that down now.

15        COURTROOM DEPUTY:  Mr. Michael, there's also an

16   instruction form on our website as well that kind of goes more

17   into details of labeling exhibits and things like that for you

18   as well.

19        MR. MICHAEL:  Great, great.  I am writing that down

20   also.  Thank you, Your Honor.  I appreciate the reference to

21   that.

22        THE COURT:  All right.  Well, I can't think of

23   anything else.

24        MR. MICHAEL:  I believe we've covered everything.

25   Nice to be back on track.

JANET DAVIS, RDR, FCRR          jbd.davis@gmail.com

DOCKET NO. 14-CV-151-J  STATUS CONFERENCE          19

1      THE COURT:  Well, we'll see.

2      MR. MICHAEL:  I think.

3      THE COURT:  I have a feeling that there's many

4  complications ahead.

5      MR. MICHAEL:  I'm sure that feeling comes from many

6  years of experience.

7      THE COURT:  No, you're the expert in this area.  You

8  try these all the time.

9      MR. MICHAEL:  I do.  Interesting area of law, that's

10  for sure.

11      THE COURT:  You bet.  Well, look forward to hearing

12  from you soon.

13      MR. MICHAEL:  Thank you, Your Honor.  Appreciate it.

14  Look forward to seeing you soon.

15      THE COURT:  You bet.  We'll stand in recess.

16      MR. MARTIN:  Bye, Judge.

17      THE COURT:  Thank you, Levi.

18  (Proceedings concluded 11:01 a.m., August 10, 2016.)

19

20

21

22

23

24

25

JANET DAVIS, RDR, FCRR                    jbd.davis@gmail.com

1                C E R T I F I C A T E

2

3

4

5        I, JANET DAVIS, Federal Official Court Reporter for

6    the United States District Court for the District of Wyoming, a

7    Registered Diplomate Reporter and Federal Certified Realtime

8    Reporter, do hereby certify that I reported by machine

9    shorthand the foregoing proceedings contained herein on the

10    aforementioned subject on the date herein set forth, and that

11    the foregoing pages constitute a full, true and correct

12    transcript.

13

14        Dated this ^  day of September, 2016.

15

16

17

18                /s/ Janet Davis

19

20                JANET DAVIS
               Registered Diplomate Reporter
21           Federal Certified Realtime Reporter
               United States Court Reporter
22

23

24

25

**CERTIFICATE OF ELECTRONIC SERVICE**

I hereby certify that, on 7 September 2016, I caused to be electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/*David M. Michael*_____
DAVID M. MICHAEL