REVIEW OF U.S. VS. ONE CESSNA AIRPLANE & $259,717 U.S. CURRENCY

SEPTEMBER 14, 2016

SUBMITTED TO:  C. LEVI MARTIN
               U.S. DEPARTMENT OF JUSTICE
               DISTRICT OF WYOMING
               CHEYENNE, WYOMING 82003-0668

PERTAININIG TO: CASE NO. USDC-WY-14-CV-151-J

PREPARED BY:   ROBERT ZAVALA
               AVIATION ENFORCEMENT AGENT
               U.S. DEPARMENT OF HOMELAND SECURITY
               CUSTOMS & BORDER PROTECTION/AIR & MARINE OPERATIONS
               AIR & MARINE OPERATIONS CENTER
               1355 CUSTOMS WAY, BUILDING 605
               MARCH AIR RESERVE BASE, CA
               92518-6363 TELEPHONE 951-656-8000

Exhibit A

**INTRODUCTION**

I, Robert Zavala, am an Aviation Enforcement Agent (AEA) with the United States Department of Homeland Security (DHS) Customs and Border Protection (CBP) Air and Marine Operations (AMO). I am currently assigned to the Air & Marine Operations Center (AMOC) Law Enforcement Division.

I am an Investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code. As such, I am empowered to conduct investigations and to make arrests for federal felony offenses. I am presently assigned to investigate federal crimes related to general aviation including criminal violations of Title 8, 18, 19, 21, 31 and 49 of the United States Code. I have over eight (8) years in the AEA position.

Prior to my employment with the AMOC, I served in various capacities within AMO for approximately three and one half (3 1/2) years between September 2007 and April 2011. That includes tenures as an AMO Air Interdiction Agent in El Centro, CA and also as an Aviation Enforcement Officer (AEO) in Tucson, AZ. My duties for those positions included the detection, interdiction and investigations of criminal violations relating primarily to alien and drug smuggling under Title 8, 18, 19 and 21 of the United States Code.

My cumulative law enforcement experience of over ten (10) years also includes approximately two (2) years as a CBP Officer (CBPO) with the Office of Field Operations (OFO) at the Port of Entry in Otay Mesa, CA. During my tenure as a CBPO, I applied knowledge of U.S. Customs and Immigration laws and specialized interview and search techniques to detect and prevent alien and drug smuggling activities in accordance with Title 8, 18, 19 and 21 of the United States Code.

During my career, I have received extensive training and experience in criminal investigations related to aviation smuggling. I am a graduate of the Federal Law Enforcement Training Center (FLETC), Criminal Investigator Training Program (CITP) which included instruction on conducting narcotics trafficking and money laundering investigations as well as the interpretation and application of federal statues, federal court procedures, and techniques required to insure the admissibility of evidence at the time of trial. In 2007, as part of my initial training with AMO, I attended the Air and Marine Basic (AMB) training academy at the FLETC in Glynco, GA where I received additional training in the interpretation and application of federal statues, criminal, customs and immigration law, as well as federal court procedures. I am also a graduate of the CBP Officer (CBPI) basic academy and have completed advanced investigative training which includes: Detecting Deception and Eliciting Response (DDER) and Covert Electronic Surveillance Program (CESP) courses.

As a Federal Agent, I have acquired criminal investigative experience through working in multi-agency task force environments, including an assignment as a Task Force Officer (TFO) with the Homeland Security Investigations (HSI) Office in San Bernardino, CA from June 2015 to May 2016. In this capacity I participated in multiple investigations involving: (1) the unlawful importation, exportation, manufacture, possession with intent to distribute and distribution of narcotics; (2) the laundering of narcotics proceeds; and (3) conspiracies associated with narcotics offenses. These investigations involved debriefing defendants, witnesses, and informants, conducting surveillance, executing search warrants, seizing narcotics-related assets, and making arrests for narcotics-related offenses.

I have also increased my collective law enforcement knowledge from personal investigations involving criminal narcotics smuggling, bulk currency smuggling, and financial investigations related to general aviation and/or the use of private aircraft to facilitate these crimes as well as through the interviews of counterpart law enforcement officers, their official reports and research of law enforcement data bases. Thru these experiences, I have become familiar with the methods employed by narcotics traffickers. These methods include the use of wireless communication technology, counter surveillance, smuggling schemes involving businesses, false or fictitious identities, and the use of aircraft and vessels to facilitate their illegal acts.

Between October 2015 and May 2016, I participated in a major, Organized Crime Drug Enforcement Forces (OCDEF) supported, HSI San Bernardino drug smuggling and money laundering investigation which resulted in the arrest of several members of a local area Drug Trafficking Organization (DTO) in February 2016. In this capacity I assisted with the coordination of AMO Air Support, surveillance, execution of the search warrants, seizure of contraband and arrest of suspects and suspect interviews. I also assisted with the processing of evidence and was responsible for the review of AMO video surveillance footage which resulted in the positive identification of the suspects that were taken into custody.

Since April 2011, as an AEA at the AMOC, I have personally investigated dozens of cases related to the use of private aircraft for illicit activities. I have also assisted other agencies; including Homeland Security Investigations (HSI), Drug Enforcement Administration (DEA), Federal Bureau of Investigations (FBI), and various other law enforcement agencies; on approximately forty plus (40+) other similar investigations. In several of these cases the investigations resulted in the seizure of bulk cash in addition to narcotics.

The AMOC is a radar coordination facility located at the March U.S. Air Force's ARB, Moreno Valley CA. This facility is electronically linked into the U.S. Federal Aviation Administration (FAA) and Department of Defense (DoD) network of radar facilities throughout the U.S. Customs & Border Protection.

The AMOC Law Enforcement Division, comprised of AEAs and Marine Interdiction Agents (MIAs), provides collective law enforcement advice, coordination and direction in investigations of aviation and maritime, or other criminal activities, smuggling cases. Information researched by AMOC Detection Enforcement Officers (DEO) and Intelligence Research Specialists (IRS) allow detection of illegal drug smuggling. This information is based on common factors in suspect aircraft or individuals.

I use this targeting method, based on training, experience, known trends, and investigative leads developed to detect illicit activity related to general and private aviation. As an AMOC AEA I have participated in multiple training events and given presentations designed to educate partner law enforcement agencies and other entities in detecting indicators of suspect activity related to aviation and maritime smuggling.

For instance, the following factors are indicative of illegal drug smuggling using private aircraft:

1. Flying via Visual Flight Rules (VFR) in Instrument Flight Rules (IFR) conditions

2. Reclusive behavior, including attempts to avoid public contact

3. Suspicious itineraries, including quick turnaround trips, improbable travel plans, and unusual distances traveled

4. Appearing to be on deadlines

5. Flying into or against inclement weather

6. Frequenting isolated airports or runways

7. Carrying large amounts of currency

8. Paying in cash, often with large denomination currency bills

9. Traveling to and from known and established drug distribution and production areas

10. Use of false or assumed identities

11. Appearance of legitimacy by investing in, using, and/or creating the appearance of legal businesses

12. Type of airplane and any modifications, including payload and ability to take-off and land on short runways and undeveloped areas

**INVESTIGATIVE REVIEW**

At the request of C. Levi, Assistant U.S. Attorney, District of Wyoming, I have reviewed the following documents:

(1) Bates No. Lewis-RFP1-00001 to 01446;
(2) Bates No. Lewis-RFP7-00001 to 00199;
(3) Bates No. Lewis-RFP9-00001 to 00024; and
(4) Lewis-Protective Order-0001 to 0067.

**ANALYSIS**

Based on my training and experience, it is my opinion that this seizure displayed facts indicative of illegal drug smuggling activity because:

1. Choice Aviation director of operations, Joel Simmons, of the Yellowstone Regional Airport (KCOD) reported that the Cessna 206, bearing tail number N6214V, was being flown by Scott Lewis in Visual Flight Rules (VFR), contrary to Federal Aviation Regulations (FARs), in inclement weather when the plane landed at KCOD. Mr. Simmons also recalled Scott Lewis from a previous, November 2013, flight in which Lewis also flew N6214V into KCOD then departed late in the evening flying directly into a snow storm. It is common practice for prudent pilots to delay or avoid VFR flight during unfavorable or inclement weather conditions. This is particularly true during times when conditions would warrant operation of an aircraft under Instrument Flight Rules (IFR).

2. Mr. Simmons described that the occupants of N6214V displayed reclusive and suspicious behavior by attempting to avoid public contact in November 2013 and on February 27, 2014 when the sun shades were placed inside the windows of the aircraft as if to conceal the interior from public view. Mr. Simmons recalled this occurred in 2013 immediately after landing while N6214V was taxiing and before the plane came to a complete stop. This was also observed in February 27, 2014, when the shades were quickly installed after landing then left on even though the aircraft was moved into a hangar for the night. Mr. Simmons reported that no radio calls were made when N6214V arrived at Cody, WY both in 2013 and 2014, while other aircraft did. Photographs of N6214V inside the hangar show the shades in place while other surrounding aircrafts don not. Choice Aviation staff and Holiday Inn personnel both reported Mr. Lewis and Gilbert Wiles were reluctant in allowing anyone to assist with carrying some of the baggage, specifically a heavy duffle bag, when it was offloaded from N6214V. Mr. Simmons also reported to Cody Police Detective Ronald Parduba the amount of luggage offloaded by Mr. Lewis and Gilbert Wiles for an overnight stay raised suspicions.

3. HSI Special Agent James Hasskamp's ROI number 006 in which global positioning systems (GPS) and navigational devices from N6214V of archived flights were examined reveal suspicious flights with no set

pattern. Special Agent Hasskmap's description of the waypoints obtained from the September 1, 2011, titled BUDNINGMA indicates "Burning Man" which is an annual social gathering that occurs in Black Rock City, Nevada (NV) which generally takes place between the end of August through the first weeks of September. Several levels of federal and local law enforcement agencies plan yearly operations to patrol this community festival because it is common knowledge that illegal drug use is prevalent among some of the attendees. Additionally, the waypoints describing flights on December 24 through February 27, 2014, show no reasonable patterns and are of varying distances.

4. Operation of an aircraft in VFR mode during marginal or inclement weather conditions which would warrant IFR operation can be an indicator of illicit activity and is often observed when air smugglers are on a deadline to reach a final destination. The November 2013 event recalled by the Mr. Simmons indicates the pilot of N6214V was in rush to continue flying. Mr. Simmons' description of the February 27, 2014, encounter at KCOD was also indicative that Mr. Lewis and Mr. Wiles where in a rush to continue to their destination which is common when drug smugglers on a deadline.

5. In the November 2013 flight, when Mr. Simmons told Mr. Lewis he couldn't stay with N6214V and sleep inside his plane, Mr. Lewis flew N6214V out of KCOD during inclement weather. The arrival of N6214V at KCOD on February 27, 2014, was also during inclement weather.

6. According to data from the GPS and navigational equipment of the airports N6214V landed at are isolated airports and include Windom Municipal Airport, Windom, Minnesota (MN), Airlake Airport, Minneapolis MN, Thomas County Airport, Thedford Nebraska (NE), Barstow-Daggett Airport, Barstow CA and Ward Field Airport, Gasquet CA. It is common practice for air smugglers to use these types of airports because they have no control towers and use self-service fueling stations which provide minimal exposure and contact with the public during their illicit activities.

7. The seized $259,717 U.S. Currency is indicative of drug smugglers transporting large amounts of currency. The packaged and inventoried manner in which the seized currency was discovered is common in bulk currency smuggling cases. The structured and smaller amounts below required banking reporting thresholds allow for quickly depositing the money later without drawing attention. These structured financial transactions also include using aircraft, in which N6214V becomes contraband because it was used to transport illicit cargo. Drug smugglers are aware of anti-money laundering programs utilized by the U.S. domestic banking industry to legally report large financial transactions and use of N6214V to transport unannounced or undeclared bulk currency was an attempt to avoid investigative scrutiny.

8. Drug smugglers often use cash to make purchases and pay for expenses rather than depositing currency in the bank and risk detection by law enforcement. In this case, several incidents of services rendered paid

for in cash are documented. This includes on November 2013 services for N6214V being paid in one hundred ($100) dollar bills, Short Take Off and Landing (STOL) upgrades to N6214V were paid for in cash and assumed identities were used when the plane was purchased in TX. The purchase of N6214V in TX was for a suspiciously large amount of $130,000 in U.S. Currency.

9. Data from the GPS and navigational equipment list from N6214V identify the plane flying to and away from known and established drug distribution and production areas in California. This includes Barstow, CA close to illegal narcotics distribution areas of Southern California, and Gasquet, CA which are in close proximity to known indoor and outdoor marijuana cultivation regions Northern California.

10. Drug smugglers use assumed identities to make purchases and pay for expenses in their attempts to conceal financial transactions from law enforcement. Several facts described in Detective Parduba's report and the HSI ROIs revealed aliases and false identifications, in conjunct ion with cash payments, was used by Mr. Lewis. This included an aliases of Ken Howard when a hotel room reservation form was filled out at Choice Aviation. Straight Flight Inc. aircraft mechanic Harry Grinton from the Centennial Airport in Englewood, CO who performed work on N6214V in June 2013 reported that in that transaction Mr. Lewis used a first name alias of Steve and Mr. Wiles used an alias of Karl Stassney.

11. Drug smugglers attempt to gain the appearance of legitimacy by investing in, using, and/or creating the appearance of legitimate businesses. Mr. Lewis and Mr. Wiles used false pretenses to buy and obtain aviation services for N6214V. When N6214V was upgraded with a STOL system by Straight Flight Inc., Mr. Lewis and Mr. Wiles claimed the plane was going to be used for aerial photography with Digital Aerial Imaging Solutions. Special Agent Hasskamp confirmed with Joshua K. Helton, Vice President and General Manager of Digital Aerial Solutions (DAS) in Tampa, FL that DAS doesn't own N6214V, nor employ Mr. Lewis or Mr. Wiles. Special Agent Hasskamp also found electronic mail (email) accounts by Mr. Wiles under the alias of Karl Stassney were established to bypass DAS business email. Agent Hasskamp also found work done by Straight Flight Inc. on N6214V and billed to Aerial Imaging in South Bend, IN used an address to Williams Aerial and Mapping in South Bend, IN. Williams Aerial and Mapping also doesn't own N6214V or employ Mr. Lewis or Mr. Wiles.

12. Drug smugglers often modify aircraft to support bigger payloads and increased accessibility to remote or undeveloped areas. By installing the STOL kit on N2614V, Mr. Lewis and Mr. Wiles increased the aircraft's ability to take off and land from short runways and remote or undeveloped areas where they can minimize their exposure and contact with the public while conducting their illicit activities.

CONCLUSION

Based on my review of the information provided along with all the known facts and based on my law enforcement experience, Mr. Lewis and Mr. Wiles were involved in air smuggling and the Cessna 206 aircraft bearing tail number N6214V along with the seized $259,717 U.S. Currency are directly associated to their drug smuggling operation.

Robert Zavala
Aviation Enforcement Agent
Air & Marine Operations Center